Roger EPPERSON, Appellant,

v.

COMMONWEALTH OF KENTUCKY,
Appellee.

No. 2003–SC–0595–MR.

Supreme Court of Kentucky.

Feb. 23, 2006.

Rehearing Denied Aug. 24, 2006.

50

Randall L. Wheeler, Assistant Public Advocate, Department of Public Advocacy, Julia K. Pearson, Assistant Public Advocate, Department of Public Advocacy, Frankfort, Counsel for Appellant.

Gregory D. Stumbo, Attorney General, Ian G. Sonego, Assistant Attorney General, Criminal Appellate Division, Frankfort, Counsel for Appellee.

WINTERSHEIMER, Justice.

This appeal is from a judgment based on a jury verdict that convicted Epperson of two counts of complicity to murder, first-degree robbery and first-degree burglary. He was sentenced to death. Epperson presents thirty-two issues on appeal. This Court has carefully reviewed each of the allegations presented and finds no merit in any of them. All of the claims will be treated in this Opinion.

Epperson was first tried in 1987 for the murder, robbery and burglary of the victims in their home. He was convicted and sentenced to death for the double murders. These convictions were ultimately set aside by this Court because the trial judge did not conduct individual voir dire on the issue of pretrial publicity. Epperson was retried in 1996, and again convicted of capital murder, first-degree armed robbery and first-degree burglary.

The victims were found dead in their home on June 17, 1985. The wife had two gunshot wounds in the back. The husband had two gunshot wounds to the head and was also gagged. Epperson was sentenced to death for the murders and forty years in prison for the noncapital felonies. This appeal followed.

### A. Standard of Review

The standard of review for an unpreserved error in death penalty cases is set forth in *Sanders v. Commonwealth,* 801 S.W.2d 665 (Ky.1990), *cert. denied,* 502 U.S. 831, 112 S.Ct. 107, 116 L.Ed.2d 76 (1991). *See also Tamme v. Commonwealth,* 973 S.W.2d 13 (Ky.1998), *cert. denied,* 525 U.S. 1153, 119 S.Ct. 1056, 143 L.Ed.2d 61 (1999); *Soto v. Commonwealth,* 139 S.W.3d 827 (Ky.2004), *cert. denied,* 544 U.S. 931, 125 S.Ct. 1670, 161 L.Ed.2d 495, 73 USLW 3556 (2005). With respect to unpreserved errors, this Court may constitutionally require Epperson to demonstrate cause and prejudice or ineffective assistance of counsel. *See West v. Commonwealth,* 780 S.W.2d 600 (Ky.1989), *cert. denied, West v. Seabold,* 518 U.S. 1027, 116 S.Ct. 2569, 135 L.Ed.2d 1086 (1996).

### I. Indictment

Epperson argues that he was denied due process of law because elements of the charges against him were not considered by a grand jury or alleged in the

indictment. He claims that the murder counts in the indictment are legally insufficient because they do not allege a culpable mens rea. Upon careful review of the record, we find that the indictment was sufficient to notify Epperson of the offenses for which he was charged. The words of the original indictment and the reindictment are substantially the same. The critical language of both documents charge that Epperson committed the offense of capital murder by participating in a robbery in which the victims were killed.

■ Section 12 of the Kentucky Constitution provides that the prosecution must obtain an indictment. RCr 6.10(2) states that an indictment "shall contain, and shall be sufficient if it contains, a plain, concise and definite statement of the essential facts constituting the specific offense with which the defendant is charged." Consistent with the language in RCr 6.10, it has been held that the indictment does not need to list every conceivable element of the offense. *Caudill v. Commonwealth*, 120 S.W.3d 635 (Ky.2003), *cert. denied*, 542 U.S. 922, 124 S.Ct. 2877, 159 L.Ed.2d 781 (2004), *and cert. denied*, *Goforth v. Kentucky*, 542 U.S. 922, 124 S.Ct. 2880, 159 L.Ed.2d 781 (2004); *Thomas v. Commonwealth*, 931 S.W.2d 446 (Ky. 1996). Complaint that the grand jury did not hear sufficient evidence is not a valid objection to an indictment. *King v. Venters*, 595 S.W.2d 714 (Ky.1980); RCr 5.10.

There is no possibility that Epperson was prosecuted under alternative theories of liability. RCr 6.10(3) allows prosecution under alternate theories of liability consistent with the alternatives set forth in the statute defining such offenses. *See Evans v. Commonwealth*, 45 S.W.3d 445 (Ky. 2001).

Epperson was not misled by any alleged defect in the indictment because of his previous trial. Virtually all of the evidence from the first trial was presented again at retrial. The only significant difference in the evidence was the testimony of Sherry Hamilton when she was recalled to testify as a defense witness regarding the account of how the murders were committed given by Hodge. Defense counsel was aware of what she testified to in the previous retrial of Hodge and was also aware of testimony from Bartley during the first trial. Epperson was not misled about the nature of the crimes or with the specific means in which those crimes were carried out and his participation therein. Accordingly, the trial judge did not err in overruling the motion to dismiss the indictment.

## II. Adequate Notice

■ Epperson contends that he was prevented from adequately preparing for trial because of a defective indictment, insufficient bill of particulars and the refusal of the prosecution to reveal the role it believed he played in the crimes charged. We disagree.

■ Epperson cannot complain of surprise or lack of notice by the indictment pertaining to the charge of "participating in the robbery." Joint liability for the commission of crimes, especially in robbery, is an age-old concept. Since the late 1800's Kentucky has allowed the conviction for complicity to stand where the indictment charged the defendant as a principal. See, e.g., *Evans v. Commonwealth*, 11 Ky. L.Rptr. 573, 12 S.W. 768 (Ky.1889) (An indictment against the defendant as principal authorized his conviction upon proof that he was present aiding and abetting.) (memorandum case) *compare Shelton v. Commonwealth*, 261 Ky. 18, 86 S.W.2d 1054 (Ky.1935) (Where indictment charged defendant with being present, aiding and abetting named principals, but proof showed that he was neither actually nor constructively present at time of commis-

sion of crime, indictment and proof held fatally at variance, notwithstanding defendant might have been convicted under evidence as an accessory before the fact.). This concept has not diminished or been superseded. Generally, all who are present at commission of robbery, rendering it countenance and encouragement, and ready to assist if needed, are liable as principal actors. *Commonwealth v. Smith,* 5 S.W.3d 126 (Ky.1999) *citing* KRS 515.020.

The prosecution filed a bill of particulars in which defense counsel was advised that the statements of Bartley and Sherry Hodge Hamilton were to be relied on for the specific conduct upon which the indictment was based. Defense counsel was aware of the testimony of Bartley at the first trial of Epperson and the testimony of Hamilton given at Hodge's retrial. He was also aware of the different accounts of whether Epperson entered the premises and took an active role in committing the crimes or whether Epperson remained outside as a lookout after having been involved in the planning of those crimes.

The record demonstrates that the defendant was fully aware of the particularities of the offenses with which he was charged. *See White v. Commonwealth,* 394 S.W.2d 770 (Ky.1965). The criminal conduct was sufficiently described. The defense would not have been any different in any event because it was a complete denial. *Schambon v. Commonwealth,* 821 S.W.2d 804 (Ky.1991). Epperson was not misled or prejudiced in the defense.

Reliance by Epperson on *Wolbrecht v. Commonwealth,* 955 S.W.2d 533 (Ky.1997) is misplaced. *Wolbrecht, supra,* held that the defendant was prejudiced by denial of a continuance and a lack of pretrial notice that the prosecution was relying on a theory of an unknown killer. That is certainly not the factual situation here. In this case, defense counsel had sufficient information with which to prepare for the retrial of this case.

### III. Guilt Phase Instructions

■ Epperson complains that the guilt phase instructions invaded the province of the jury and denied him a fair and reliable capital trial because Bartley's name was omitted. He contends that the jury could believe either the scenario testified to by Bartley—that Epperson went into the house with Hodge, or the scenario testified to by Hamilton—that Epperson was the lookout while Bartley and Hodge went in.

■ Every issue of fact raised by the evidence and material to a defendant's defense is required to be submitted to the jury on proper instructions. *Hayes v. Commonwealth,* 870 S.W.2d 786 (Ky.1993). Here, the omission of Bartley's name was not material to the defendant's defense. Epperson was convicted of complicity and it did not matter if he was acting in complicity with Hodge or Bartley. Accordingly, any error in the instructions was harmless. RCr 9.22.

### IV. Other Bad Acts

■ Epperson claims that the admission of evidence, without notice, that he had committed other crimes denied him due process and reliable sentencing. He directs our attention to two different occurrences. First, he asserts that Bartley improperly testified that he (Epperson) and others were involved with dealing drugs and using them. The trial judge sustained the defendant's objection, but overruled the motion for a mistrial. He also ordered the prosecutor to avoid references to other crimes. There was no request for an admonition.

Second, Epperson maintains that Hamilton improperly testified that just prior to

the murders, Hodge, Bartley and Epperson had been in Georgia and committed an armed robbery. Defense counsel objected to this testimony and his motion for a mistrial was overruled. The prosecutor agreed to warn the witness from making these types of comments.

■ There is no indication that the prosecutor deliberately elicited either of the statements from these witnesses. Where, as here, evidence of other crimes is introduced into evidence through the non-responsive answer of a witness, this Court must look at all of the evidence and determine whether the defendant has been unduly prejudiced by that isolated statement. *Phillips v. Commonwealth,* 679 S.W.2d 235 (Ky.1984). Considering the entire record, we must conclude that Epperson was not unduly prejudiced by the two comments.

## V. Lack of Remorse

■ Epperson maintains that evidence of a lack of remorse at the guilt/innocence phase was irrelevant, inflammatory and unconstitutionally diluted the presumption of innocence. Although this issue is unpreserved, he believes it should be reviewed because there was no possible strategic reason for the failure to preserve the issue, particularly because an objection was made to evidence of a lack of remorse at the penalty phase.

After Hamilton was recalled to testify as a defense witness, she was asked if she heard a conversation among Epperson, Hodge and Bartley in which they discussed disposing of the weapons, burning the clothing and how the murders occurred inside the house. She answered in the affirmative and indicated that it was consistent with what Hodge had told her earlier to the effect that he and Bartley had shot the victims. On cross-examination, the prosecution asked Hamilton if any of the three had shown any remorse during

these conversations, and she responded in the negative. Although objection was made to evidence of the lack of remorse at the penalty phase, there was no objection or other motion concerning the testimony at this phase of the trial. RCr 9.22 contemplates a contemporaneous objection. Under all the circumstances, any possible error would not be sufficiently prejudicial to rise to a reversible, manifest injustice.

## VI. Address of Witness

Epperson states that the prosecution improperly concealed the whereabouts of Hamilton and denied him a fair trial. In a footnote to a September 10, 1998 motion the defense requested that the Commonwealth put forth proof why Hamilton's whereabouts have been kept secret. At a contentious pre-trial hearing on October 26, 1998, the prosecutor stated that Hamilton was afraid for her life.

■ Hamilton's identity was not secret, thus, the balancing test enunciated in *Roviaro v. United States,* 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957) does not apply here. Furthermore, a defendant does not have a constitutional right to gain access to every witness he desires. *United States v. Bailey,* 834 F.2d 218 (1st Cir.1987). *United States v. Oliver,* 908 F.2d 260 (8th Cir.1990) identified two general inquiries that should be considered in determining whether such a right exists. First, whether the defendant has shown reasonable diligence in attempting to obtain the requested information without the government's assistance. Second, whether the defendant has demonstrated that the requested information would have led to the admission of otherwise undiscoverable evidence that is both material and favorable to the defendant.

■ The first question requires consideration of whether the address of Hamil-

ton was exclusively within the control and knowledge of the prosecutor. *Oliver, supra.* Here, there is no evidence Hamilton was in hiding—the prosecution noted she was working, nor is there any evidence that the prosecution limited her contact with the defendant. In fact, the prosecutor recognized that the defense had a right to talk to the witness, but he was not going to get the information for them.

Even if defense counsel exercised reasonable diligence in searching for Hamilton, he still has not shown that her testimony would have been any more material and favorable had a pre-trial meeting occurred. Defense counsel had an adequate opportunity to cross-examine Hamilton at trial, especially on the alleged tape-recorded conversations that she had with Bartley.

### VII. Prior Testimony

Epperson argues that Bartley's previous testimony was not admissible at his trial because he was not unavailable to testify. We disagree.

The trial judge ruled that Bartley could not invoke his Fifth Amendment right against self-incrimination because he had already been convicted. Bartley then testified in front of the jury and with the exception of a few minor matters, he indicated that he did not remember what happened and did not remember his prior testimony. Following his cross-examination, the prosecution moved to have Bartley declared unavailable. The trial judge granted that motion and the prior testimony given by Bartley was read into evidence over the defendant's objection.

■ We recognize that the offenses for which Epperson was being tried were committed prior to July 1, 1992, the effective date of the Kentucky Rules of Evidence, so the issue becomes whether Bartley's prior testimony would have been admissible under pre-existing law. KRE 107(b). *See also Hodge v. Commonwealth,* 17 S.W.3d 824 (Ky.2000). As noted in *Hodge, supra,* we previously adopted the definition of unavailability contained in Rule 804(a) of the Federal Rules of Evidence. *See Crawley v. Commonwealth,* 568 S.W.2d 927 (Ky.1978), *cert. denied,* 439 U.S. 1119, 99 S.Ct. 1028, 59 L.Ed.2d 79 (1979). Like our current rule, that rule states that a witness is unavailable when he "testifies to a lack of memory of the subject matter of the declarant's statement."

Here, Bartley's prior testimony was admissible under pre–1992 law. Moreover, because Bartley appeared for cross-examination at the previous trial, the Confrontation Clause places no constraints on the use of his prior testimonial statements. *See Crawford v. Washington,* 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004). There was no error in admitting the prior testimony.

### VIII. Box of Materials

■ Epperson argues that the refusal of the trial judge to examine the contents of a box of material allegedly belonging to Bartley denied Epperson effective assistance of counsel. Defense trial counsel sought to have the trial judge examine the contents of the box, but he denied the motion as well as a motion to include it in the appellate record.

At a pretrial hearing in 1998, counsel for Epperson informed the trial judge that a box had been found at the Department for Public Advocacy which contained papers that appeared to relate to Epperson's case. Counsel did acknowledge that the files might have originated from Bartley's attorneys. A retired investigator for the DPA testified that he found a letter evidencing a prosecution deal with Bartley

for his testimony against Epperson and Hodge, but which would not be completed until after his testimony in both the Letcher and Jackson county cases. Murphy testified that "Epperson and Hodge" was written on the outside of the box and stated that he had seen the box sometime around 1993. He testified that the box was not sealed when he examined it.

In October 1998, the trial judge conducted a pretrial hearing on the box question. The trial judge read a memo Murphy had produced regarding the contents of the box and the trial judge indicated that he did not find any exculpatory evidence and further found no legal justification to inspect the box.

Defense counsel declined to pursue the invitation by the trial judge for an order which directed a DPA attorney to put the facts that he presented in court in the form of an affidavit. Defense counsel also did not pursue the invitation of the trial judge to present additional evidence to the court at a subsequent hearing. Defense counsel indicated that the Murphy memorandum by itself did not prove that a secret deal had been made. Finally, Bartley testified at the pretrial hearing and denied the existence of any tape recorded statements or letters between him and Sherry Hodge Hamilton. It has been recognized that the attorney-client privilege continues to remain valid not only after the case has been concluded, but even after the death of the client. *Swidler & Berlin v. United States,* 524 U.S. 399, 118 S.Ct. 2081, 141 L.Ed.2d 379 (1998). This Court has also recognized that the attorney-work product privilege protects information compiled by counsel in the course of preparation for trial, subject to certain limitations. *Cf. Morrow v. Brown, Todd & Heyburn,* 957 S.W.2d 722 (Ky.1997). *Kyles v. Whitley,* 514 U.S. 419, 115 S.Ct. 1555, 131 L.Ed.2d 490 (1995), does not establish any

principle for a criminal defendant to obtain information collected by counsel for a co-defendant. In this situation, the trial judge acted within his discretion and properly deferred to the legal rights of other parties in overruling the motion by Epperson.

### IX. Codefendant's Death Sentence

■■■ Epperson argues that the admission of the judgment of a capital conviction and sentence from another county, including the death sentence of a co-defendant, during an improperly combined penalty and truth-in-sentence phase denied him due process and a reliable sentencing. We disagree.

The introduction of evidence of the criminal convictions in Letcher County was permissible penalty phase evidence pursuant to KRS 532.025(1)(b). *See Templeman v. Commonwealth,* 785 S.W.2d 259 (Ky. 1990).

There was no error in joining the capital sentencing phase and truth-in-sentencing phase for the other convictions. The language in KRS 532.055(3) requiring separation of these phases was deleted by the legislature as part of the 1998 amendment to that statute. As this Court has previously held, amendments to sentencing laws apply to all cases tried after the effective date of the amendment. *Commonwealth v. Reneer,* 734 S.W.2d 794 (Ky.1987).

■■■ Generally, a sentence imposed on a co-defendant is not relevant evidence. *See Neal v. Commonwealth,* 95 S.W.3d 843 (Ky.2003). Here, reference to Hodge's convictions and sentences in Letcher County was harmless because Epperson was convicted of the same crimes and received an identical sentence.

### X. Enhancement

■■■ Epperson complains that there is no articulated role or standard of review

for sentencing by the trial judge; that aggravators were considered but not found beyond a reasonable doubt; and, that the trial judge did not consider mitigation evidence.

The trial judge was within his proper discretion in upholding the jury's sentence of death. The contention that there is no properly articulated standard of review for the trial judge in such a circumstance is without merit. *Bowling v. Commonwealth,* 942 S.W.2d 293 (Ky.1997), *cert. denied,* 522 U.S. 986, 118 S.Ct. 451, 139 L.Ed.2d 387 (1997).

We recognize that the trial judge's report is imprecise with respect to what aggravators the jury was instructed on and found. Contrary to the report, the jury was not instructed that Epperson's acts "created a great risk of death to more than one person in a public place ..." Nor was it instructed to find that the murders had been committed "for purpose of receiving money or any other thing of monetary value, or for profit." It was instructed to consider whether the murders were "committed by a person with a prior record of conviction for a capital offense," but contrary to the trial judge's report, the jury did not find those two aggravators.

Despite the imprecision in the report, we find that this unpreserved issue amounts to harmless error. The jury was instructed on seven different aggravators and found the existence of five of them beyond a reasonable doubt. It recommended Epperson be sentenced to death. Other than the recognized inaccuracies, the report of the trial judge is correct. There is no possibility that the result would be different with a corrected report. *cf. Foley v. Commonwealth,* 953 S.W.2d 924 (Ky.1997), *cert. denied,* 523 U.S. 1053, 118 S.Ct. 1375, 140 L.Ed.2d 522 (1998).

Reliance by Epperson on *Ring v. Arizona,* 536 U.S. 584, 122 S.Ct. 2428, 153 L.Ed.2d 556 (2002) is misplaced. This was not a situation where the trial judge found statutory aggravating factors on his own in order to impose a sentence beyond that authorized by the findings of the jury. *cf. Soto v. Commonwealth,* 139 S.W.3d at 841 *et seq.* ("Appellant, however, interprets *Ring* as holding that aggravating circumstances are, substantively, elements of the offense, not factors relevant only to sentencing. He cites *Jones* for the proposition that such elements must be recited in the indictment. Under federal law, an indictment must set forth all of the elements of the offense ... Regardless, we are not bound by federal law on this issue because, as noted in *Apprendi,* the Fourteenth Amendment has never been construed to incorporate against the states 'the Fifth Amendment right to "presentment or indictment by a Grand Jury." ' ") (internal citations omitted).

Moreover, the jury was properly instructed on mitigating factors. KRS 532.025 does not require a trial judge to make findings as to mitigating circumstances when reviewing the jury's recommended sentence of death. *See Foley, supra.*

## XI. Courtroom Presence

Epperson asserts that it was error to allow the son of the victims, who was also the Jackson County Circuit Clerk, to remain in the courtroom throughout the guilt phase and then become a rebuttal witness. He also challenges the right of Morris to sit at the prosecutor's table during the penalty phase.

 KRE 615 provides in part that "[a]t the request of a party the court shall order witnesses excluded so that they cannot hear the testimony of other witnesses and it may make the order on its own motion." As in *Smith v. Miller,* 127

S.W.3d 644 (Ky.2004), we acknowledge that the purpose of the rule is to ensure the integrity of the trial by denying the witness an opportunity to alter testimony in the light of that presented by other witnesses. *Smith, supra,* also recognizes that the separation of witness rule gives the trial judge broad discretion to permit or refuse a witness permission to testify when the rule is violated. The automatic exclusion of a witness from testifying who was in the courtroom during the testimony of another witness can be an abuse of discretion. *Smith.*

The record does not reflect that the rule concerning separation of witnesses was specifically invoked. Further, the mere fact that Morris was present in the courtroom after he testified as the first witness for the prosecution, did not amount to a violation of KRE 615. There was no objection to either the initial testimony or that on recall. A review of the record indicates that no other witness who testified recounted the same facts as did Morris when he testified on recall. There was no error in allowing the witness to sit at the prosecutor's table during the penalty phase. *See Brewster v. Commonwealth,* 568 S.W.2d 232 (Ky.1978); KRE 615(3).

## XII. Victim Impact

Epperson maintains that it was error to allow the prosecution to present evidence and give arguments designed to glorify the Morrises' character, exploit their suffering and compare them to him. We disagree.

The son testified that he saw his father on June 16, 1985, Father's Day, at a local restaurant. He stated that his father had been sick; that he was 65 years old, but was active; and, he liked to trade. The son described his mother as a caring, loving person as well as his father's faithful companion.

We have previously upheld the testimony regarding the character and background of the victim during the guilt phase of the trial. *See Bowling v. Commonwealth, supra; Bussell v. Commonwealth,* 882 S.W.2d 111 (Ky.1994), *cert. denied,* 513 U.S. 1174, 115 S.Ct. 1154, 130 L.Ed.2d 1111 (1995). The United States Supreme Court in *Payne v. Tennessee,* 501 U.S. 808, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991) upheld the victim-impact testimony and argument in the penalty phase of a death penalty trial and the opinion also recognized that it is often appropriate, even necessary, to present some evidence about the characteristics of a victim in a guilt phase.

There were no objections to the prosecutor's penalty phase closing argument. Defense counsel was permitted the final penalty phase argument. Again *Payne, supra,* permits the prosecution to introduce evidence regarding the impact of the crime on the family of the victim and to argue that impact during closing argument in the penalty phase. This Court has also acknowledged the same principles. *Hodge v. Commonwealth,* 17 S.W.3d 824 (Ky.2000). *cf. Darden v. Wainwright,* 477 U.S. 168, 106 S.Ct. 2464, 91 L.Ed.2d 144 (1986) (claiming that a prosecutor's argument was inflammatory or diminished when defense counsel was given the final argument after the prosecutor). There was no error in regard to the arguments of the prosecution. The argument regarding comparisons is unconvincing. Epperson was not denied any of his rights under either the federal or state constitution.

## XIII. Prison Conditions

Epperson argues that the cross-examination of a correctional officer in the penalty phase about prison conditions was error. The corrections officer testified

that Epperson never presented any problems on death row, had never been violent and was considered by him as a model prisoner. He stated that Epperson had lost weight because of illness and had worked in the prison as a janitor and laundry man. On cross-examination, the prosecutor asked the officer to discuss the daily routine on death row which included breakfast, cleaning, an hour of exercise outside, TV in the cells, music, and their own bed and bathroom. Defense counsel did object to the relevance of the questions about cigar smoking by Epperson and the prosecution agreed to move on to another question. Redirect examination by the defense followed.

Epperson claims that during closing argument in the penalty phase, the prosecutor recounted the evidence of amenities in prison so as to inflame the jury, and to present to the jury a picture of a so-called country club atmosphere. He asserts that the evidence was irrelevant. We conclude that the questions about prison confinement and the conditions related thereto were relevant and within the scope of cross-examination. There was no error.

### XIV. Aggravating Circumstances

■ Epperson states that he was denied due process by the use of aggravating circumstances that were not considered by a grand jury or alleged in the indictment against him and his sentence was improperly enhanced to death. We disagree.

Aggravating circumstances are not required to be charged in the indictment and thus the indictment does not render the death sentence improper. RCr 8.18 requires that any complaint regarding an indictment other than the complete failure to show jurisdiction in the court or to charge an offense, must be presented to a court by pretrial motion. *See also Thomas v. Commonwealth, supra.* The United States Supreme Court has also held that under the federal rules of criminal procedure any complaint about the failure of the indictment to allege a sentence aggravating or enhancement factor must be raised in the trial court by timely motion. *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 152 L.Ed.2d 860 (2002), *overruling Ex parte Bain,* 121 U.S. 1, 7 S.Ct. 781, 30 L.Ed. 849 (1887).

■ This Court has ruled that aggravating circumstances need not be specifically charged in the indictment. *See Wheeler v. Commonwealth,* 121 S.W.3d 173 (Ky.2003), *cert. denied,* 541 U.S. 1051, 124 S.Ct. 2180, 158 L.Ed.2d 746 (2004). The allegation that the omission of aggravating circumstances from the indictment is a jurisdictional defect so as to invalidate the indictment and trial has been specifically rejected by the United States Supreme Court in *Cotton, supra.* We also reject that claim.

### XV. Verdict Forms

■ Epperson asserts that he was denied due process because the penalty phase verdict form directed the jury to fix an aggravated sentence if it found aggravating circumstances. He maintains that the penalty verdict forms presented to the jury made it impossible for the jury to find aggravating circumstances without fixing an aggravated penalty. He also states that the trial court did not instruct the jury that even if it found the aggravator, it could still impose the whole range of sentences.

The verdict forms used by the trial judge with respect to the offense of murder left a blank space for the jury to write in which aggravating circumstance, if any, it found existed beyond a reasonable doubt and further left a blank space for the jury to specify the sentence to be fixed. The court provided verdict forms without ag-

gravating circumstances to impose a sentence for a term of years or a sentence of life in prison. The trial judge used a verdict form found in Section 12.10A of 1 Cooper *Kentucky Instructions to Juries (Criminal)*, (4th Ed.1993). This form had been previously approved by this Court in *Hodge v. Commonwealth, supra.* The verdict form wherein aggravating circumstances could be and were found, did not require the jury to impose any particular sentence. The instructions when considered as a whole make it clear that the jury was not required to impose a death sentence merely upon a finding of aggravating circumstances. Moreover, the defense counsel in closing argument, advised the jury they were not required to impose a death sentence regardless of any aggravating circumstances that might be found. Pursuant to the standards set out by the United States Supreme Court in *Boyde v. California*, 494 U.S. 370, 110 S.Ct. 1190, 108 L.Ed.2d 316 (1990), the verdict forms did not result in an unconstitutional death sentence.

### XVI. Penalty Phase Instructions

Epperson complains that the penalty phase instructions were inadequate and insufficient and denied him due process of law. He presents 15 sub-issues, some of which he claims are preserved and others he recognizes as being unpreserved. By citing *Young v. Commonwealth*, 50 S.W.3d 148 (Ky.2001), he maintains that the unpreserved issues should be reviewed because there was no possible strategic reason for the failure to preserve them.

■■■■ We have exhaustively examined the two in-chambers conferences regarding the penalty phase instructions and find the alleged errors were not preserved. Generally, instructions must be considered as a whole, taking into account the evidence and closing argument of counsel.

*See Boyde, supra.* The instructions here either taken as a whole or individually were not unconstitutional under the precedents set forth by the United States Supreme Court. Substantial discretion in providing capital sentencing procedures is left to the states with only few specific limitations. *See Romano v. Oklahoma*, 512 U.S. 1, 114 S.Ct. 2004, 129 L.Ed.2d 1 (1994); *Tuilaepa v. California*, 512 U.S. 967, 114 S.Ct. 2630, 129 L.Ed.2d 750 (1994). The arguments presented have been previously rejected by this Court, are unpreserved, and any possible error would be harmless.

### XVII. Double Jeopardy Claim

■■■ Epperson argues that the use of a single transaction in order to convict him of multiple crimes violated his right to be free from double jeopardy. He concedes that the issue is unpreserved, but he asks this Court to revisit this question even though it had been admittedly rejected in *Mills v. Commonwealth*, 996 S.W.2d 473 (Ky.1999), *cert. denied*, 528 U.S. 1164, 120 S.Ct. 1182, 145 L.Ed.2d 1088 (2000). The jury instructions pertaining to the offense of murder did not require the jury to find that Epperson participated in a robbery. We decline the invitation to revisit *Mills, supra.* The defendant was not deprived of any federal or state right.

### XVIII. Reuse of Two Convictions

■■■ Epperson claims that the reuse of the burglary and robbery convictions as aggravating circumstances denied him his right to be free from double jeopardy. The issue presented at this time is admittedly unpreserved. Nevertheless, Epperson urges this Court to revisit earlier decisions. Again, we decline the invitation. *Bowling v. Commonwealth, supra*, held that simply because the aggravating circumstance duplicates one of the underlying

offenses, it does not mean that the defendant is being punished twice for the same offense.

### XIX. Closing by Prosecution

██ Epperson contends that the prosecutor during the penalty phase argument noted that the jury had already found Epperson guilty of first-degree robbery and first-degree burglary during the guilt phase and thus in effect had already determined the factually related aggravating circumstances needed for the death penalty had already been found to be true beyond a reasonable doubt. Epperson admits there was no objection to this argument. The record indicates that during an in-chambers conference regarding the penalty-phase instructions, defense counsel specifically agreed that the aggravating circumstances No. 3, 4, 5, 6 and 7 had already been found by the jury. This Court has previously held that in light of the guilt-phase findings by the jury such a closing argument is not prejudicial error. *Sanders v. Commonwealth*, 801 S.W.2d 665 (Ky.1990); *see also Bowling v. Parker*, 138 F.Supp.2d 821 (E.D.Ky.2001) (*denying habeas corpus for Bowling v. Commonwealth, supra*), affirmed, *Bowling v. Parker*, 344 F.3d 487 (6th Cir.2003), *cert. denied*, 543 U.S. 842, 125 S.Ct. 281, 160 L.Ed.2d 68 (2004). There was no prosecutorial error in this instance.

### XX. Photographs of Victims and Crime Scene

██ Epperson asserts that the photographs were not properly admissible because they were unduly inflammatory and prejudicial. He also complains about the introduction of the crime scene video. The trial judge agreed to block out a small part of the tape from the view of the jury and to disengage the audio track of the video upon request by the defense. The videotape, without audio, was then played to the jury with two blocked portions and the jury was given an admonition to disregard the two parts blocked. Defense objected to some, but not all of the photographs introduced.

A review of the record indicates that there was a reasonable amount of interplay insofar as objections and trial judge intervention in regard to the photographs and video. This Court has upheld the admission of photographic evidence and videotapes unless the condition of the body has been materially altered by mutilation, autopsy or decomposition or other extraneous causes unrelated to the crimes to the extent that the images could arouse passion and prejudice. *Foley v. Commonwealth, supra; Hodge, supra.* There was no error or abuse of discretion in allowing the introduction of the photographs of the victim and the crime scene.

### XXI. Deletion by Detective

██ Epperson maintains that the indictment should have been dismissed because a police detective deleted exculpatory information concerning confidential informants from his investigative report and that this deletion violated a court order to turn over such information. We disagree.

██ A motion or objection by a defense attorney for one codefendant will not be deemed a motion or objection for the other defendant. Both attorneys must make it clear the objection is made for both defendants. *Brown v. Commonwealth*, 780 S.W.2d 627 (Ky.1989), *cert. denied*, 494 U.S. 1087, 110 S.Ct. 1825, 108 L.Ed.2d 954 (1990). In other situations, counsel for Epperson made it clear when he joined a codefendant's motion or objection. There was no notice to the trial

judge that what was good for one defendant was good for another.

This is essentially the same argument as raised in *Hodge*. It was clear that the detective indicated he would attempt to obtain the information desired and supply it to the defense and no further complaint was made. The defense did not establish that the information was deliberately withheld so as to amount to a *Brady* violation. *See Coe v. Bell*, 161 F.3d 320 (6th Cir. 1998). The mere possibility that an item of undisclosed information might have helped the defense or affected the outcome does not establish materiality in a constitutional sense so as to constitute a *Brady* violation. *United States v. Agurs*, 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976). Epperson has not demonstrated that the alleged discovery violation was actually prejudicial or that the trial judge committed error or otherwise abused his discretion.

### XXII. Capital Kidnapping

Epperson complains that KRS 532.025 is unconstitutional because it does not narrow the class of persons eligible for the death penalty. We must disagree.

Epperson was not sentenced to death for capital kidnapping, but was found guilty of two murders and multiple statutory aggravating circumstances as defined in KRS 532.025. The proposition urged by Epperson does not apply in this case and it does not provide the foundation for an argument that the Eighth Amendment was violated with regard to his death sentences.

KRS 532.025 is not facially unconstitutional and the aggravating circumstances for which Epperson was found guilty by the jury are sufficient to authorize his death sentence. *See Tamme v. Commonwealth, supra.*

### XXIII. Statutory Guidance

Epperson states that there is insufficient statutory guidance for the imposition of the death penalty. He concedes that this issue is unpreserved, but claims there was no possible strategic reason for the failure to preserve the issue.

KRS 532.025 provides sufficient statutory guidance for the imposition of the death penalty. The Sixth Circuit, in considering another Kentucky case, has rejected similar concerns about the death penalty statute. *McQueen v. Scroggy*, 99 F.3d 1302 (6th Cir.1996), *cert. denied, McQueen v. Parker*, 520 U.S. 1257, 117 S.Ct. 2422, 138 L.Ed.2d 185 (1997). In *Tuilaepa, supra*, the United States Supreme Court has recognized that states may grant the sentencing authority vast discretion to evaluate the circumstances relevant to the particular defendant and the crimes committed in deciding whether to impose a death sentence. The Sixth Circuit noted in *McQueen, supra*, that the Kentucky death penalty statute and capital sentencing process is similar to that of Georgia, which was approved by the United States Supreme Court in *Gregg v. Georgia*, 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976). The Kentucky statute is constitutionally sufficient to authorize a death sentence.

### XXIV. Death Sentences Applied

█ Epperson maintains that the death penalty as applied in Kentucky is discriminatory, arbitrary and inappropriate, and that this question should be reviewed because there is no possible strategic reason for failure to preserve it. Review is also required by KRS 532.075.

We find that the death sentence as applied in Kentucky is not unconstitutionally arbitrary or discriminatory. The Sixth Circuit has rejected a similar argument in *McQueen*. Recent Kentucky cases reach-

ing the same conclusion are as follows: *Tamme v. Commonwealth, supra; Mills v. Commonwealth, supra; Stopher v. Commonwealth,* 57 S.W.3d 787 (Ky.2001), *cert. denied,* 535 U.S. 1059, 122 S.Ct. 1921, 152 L.Ed.2d 829 (2002); *Caudill v. Commonwealth, supra;* and, *Thompson v. Commonwealth,* 147 S.W.3d 22 (Ky.2004), *cert. denied,* —— U.S. ——, 125 S.Ct. 2966, 162 L.Ed.2d 893, 73 USLW 3750 (2005). Moreover, the capital sentencing procedure in Kentucky is in conformity with the constitutional requirements set out in *McCleskey v. Kemp,* 481 U.S. 279, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987). It is conceded that an argument about racial discrimination with respect to capital sentencing was not the subject of a pretrial motion or any evidence prior to trial as now required by the Kentucky Racial Justice Act, KRS 532.300. The Kentucky capital sentencing process is constitutional and not arbitrary or discriminatory.

### XXV. Proportionality Review (Bartley's sentence)

■ Epperson asserts that his death sentence is unconstitutional because it is disproportionate to the sentence imposed on co-indictee Bartley. We must disagree.

■ Bartley entered a plea agreement with the prosecution in which he testified for the prosecution in this trial as well as another trial and ultimately received a sentence of life imprisonment without possibility of parole for 25 years. The other codefendant, Benny Hodge, was convicted of the same crimes and sentenced to death for the two murders. *Hodge, supra.* Simply because Bartley did not receive a death sentence does not elevate Epperson's punishment to the disproportionate quality under KRS 532.075. This Court has previously rejected a similar argument in *Perdue v. Commonwealth,* 916 S.W.2d 148 (Ky.1995), *citing Standefer v. United*

*States,* 447 U.S. 10, 100 S.Ct. 1999, 64 L.Ed.2d 689 (1980). In addition, this Court has also held that sentences imposed on other defendants are not relevant in determining the validity of a death sentence or other sentence. *See Marshall v. Commonwealth,* 60 S.W.3d 513 (Ky.2001), *cert. denied,* 535 U.S. 1024, 122 S.Ct. 1622, 152 L.Ed.2d 633 (2002). The sentencing procedure in a capital case requires individualized determination on the basis of the character of the individual defendant and the circumstances of the crime. *Cf. Tuilaepa, supra.* The sentences imposed here do not constitute error.

### XXVI. Proportionality Review

Epperson disagrees with the manner in which this Court conducts proportionality review pursuant to KRS 532.075. Both this Court and the Sixth Circuit have rejected similar arguments. *See, e.g., Thompson v. Commonwealth, supra,* and *McQueen.* The manner in which this Court conducts proportionality review is very similar to the method used by other states which has been upheld. *See, e.g., State v. Cobb,* 234 Conn. 735, 663 A.2d 948 (1995). The concerns expressed by Epperson about his inability to access the data are without merit. This Court does not use any secret data, but simply compares one death penalty case with all the other cases in which the death sentence was imposed after January 1, 1970. *See Harper v. Commonwealth,* 694 S.W.2d 665 (Ky.1985), *cert. denied,* 476 U.S. 1178, 106 S.Ct. 2906, 90 L.Ed.2d 992 (1986).

■ This Court on many occasions has determined that the proportionality review it conducts is in conformity with KRS 532.075(3) and is constitutional. *See Parrish, supra,* and *Tamme.* Under all the circumstances of this case, the death penalty is entirely appropriate, the proportionality review conducted by this Court does

not violate due process or equal protection of either the Federal or State Constitution. Pursuant to KRS 532.075(3), we have carefully reviewed the death sentence imposed herein and conclude that it was not imposed under the influence of passion, prejudice or any other arbitrary factor. There was ample evidence to support the finding of aggravating factors concerning which the jury was instructed. We have also reviewed all the cases decided since 1970 in which the death penalty was imposed. We have given particular attention to those cases in which the defendant was sentenced to death for multiple intentional murders. All the cases reviewed have been previously cited by this Court in numerous decisions. *See Parrish.* The cases noted are adopted by reference in this opinion.

We have also considered whether the sentence of death is excessive or disproportionate to the penalty imposed in any of these cases as required by statute and have accordingly reviewed all the circumstances of the crime committed here and all the evidence surrounding the defendant and his background. Information used in considering this penalty has been compiled in accordance with KRS 532.075(6)(a)(b)(c). Consequently, we have determined that the sentence of death here was not excessive or disproportionate to the penalties imposed in similar cases considering both the crimes and the defendants.

## XXVII. Lethal Injection

Epperson raises questions about whether lethal injection as the method of execution presents a lingering or painful death. He offers several law review articles and other writings that present data suggesting it does. He urges this Court to rule that lethal injection violates the Eighth Amendment and Section 17 of the Kentucky Constitution which prohibit cruel and unusual punishment.

This Court has previously held that lethal injection is not unconstitutional. *Wheeler v. Commonwealth, supra, citing People v. Stewart,* 121 Ill.2d 93, 117 Ill. Dec. 187, 520 N.E.2d 348 (1988). Execution by lethal injection is now used by 37 of the 38 states with the death penalty, which arguably indicates a national consensus that it is a constitutional method of execution. *See, e.g. Cooper v. Rimmer,* 379 F.3d 1029 (9th Cir.2004). The Ninth Circuit has also rejected a specific challenge to the lethal injection protocol used by California in *Beardslee v. Woodford,* 395 F.3d 1064 (9th Cir.2005), *cert. denied,* 543 U.S. 1096, 125 S.Ct. 982, 160 L.Ed.2d 910 (2005). We find the argument is without merit.

## XXVIII. Death Qualification of Jurors

Both this Court and the United States Supreme Court have rejected the arguments that death penalty qualification of potential jurors to sit on a case in which the prosecution is seeking the death penalty is unconstitutional. *See Lockhart v. McCree,* 476 U.S. 162, 106 S.Ct. 1758, 90 L.Ed.2d 137 (1986); *St. Clair v. Commonwealth,* 140 S.W.3d 510 (Ky.2004); *Caudill, supra; Thompson, supra; Sanders, supra.* In this case, there was no error.

## XXIV. Peremptory Challenges

■ Epperson maintains that the refusal by the trial judge to order more peremptory challenges in this capital case violated his constitutional rights. He requested at least 20 peremptory strikes because of the unique circumstance of the case and the possibility of a death penalty. The trial judge denied the motion, ordering that each side would be allowed nine peremptory strikes.

The trial judge was not required to grant additional peremptory challenges be-

yond the number authorized by RCr 9.40. This Court has repeatedly held that the decision on whether to grant additional peremptory challenges is within the sound discretion of the trial judge, even in a death penalty case. *Stopher v. Commonwealth*, 57 S.W.3d 787 (Ky.2001). We have rejected arguments that the possibility of a death sentence or the fact that the case was highly publicized should automatically require the trial judge to grant additional peremptory strikes. *See Thompson v. Commonwealth, supra; Furnish v. Commonwealth*, 95 S.W.3d 34 (Ky.2002), *cert. denied*, 540 U.S. 844, 124 S.Ct. 115, 157 L.Ed.2d 80 (2003); *Bowling v. Commonwealth, supra.* The cases cited by Epperson are unconvincing. There was no abuse of discretion or any other error.

### XXX. Removal of Juror

Epperson states that the trial judge abused his discretion when he declined to excuse for cause a prospective juror who could not consider a minimum sentence for the offense of intentional murder, and that accordingly, he was deprived of his right to due process. We disagree.

■ The juror in question expressed a reluctance to consider a minimum sentence of twenty years in the event someone were to be convicted of two counts of intentional murder, one count of robbery and one count of burglary. The juror was ultimately removed from the panel by a peremptory challenge by the defense. A review of all of the answers given by the prospective juror during voir dire indicates her willingness to consider a minimum sentence. The juror was questioned by both prosecution and defense and in response to questions by defense counsel indicated that she would have to listen to the evidence in the case. She stated that she could consider a term of years depending on the facts of the case. A subsequent request for removal of the juror by the defense was denied by the trial judge.

An analysis of the answers given by the juror during voir dire indicates that there was sufficient basis for her to express her willingness not to automatically vote for the death penalty and to consider the full range of penalties. This Court has held that the question of excusing a prospective juror comes within the sound discretion of the trial judge, taking into account the entire voir dire answers by a specific juror. *See Hodge, supra*,

Epperson was not deprived of any of his rights. The authorities cited in the brief are unconvincing. There was no abuse of discretion or any other error.

### XXXI. Residual Doubt

Epperson argues that there was residual doubt of a genuine nature that prevents the imposition of a death sentence. We disagree.

■ The United States Supreme Court and this Court have held that residual doubt is not a mitigating circumstance for the death penalty. *See Franklin v. Lynaugh*, 487 U.S. 164, 108 S.Ct. 2320, 101 L.Ed.2d 155 (1988), *accord Tamme v. Commonwealth, supra.* A finding of guilt as to aggravating circumstances in a death penalty case is considered under the reasonable doubt standard. Here, the evidence presented was sufficient to establish guilt beyond a reasonable doubt so as to meet the legal standards and constitutional requirements.

### XXXII. Cumulative Error

Epperson complains that the errors enumerated in the previous arguments violated both federal and state constitutional requirements. His argument is without merit. Each of the allegations made by Epperson has been exhaustively reviewed

and discussed in this opinion and is refuted by the record in this case. Repeated allegations of error do not increase their validity. There was no individual error and thus there was no cumulative error. *Cf. Parrish, supra.*

Epperson received a fundamentally fair trial devoid of any state or federal constitutional federal violations.

The judgment of conviction and the sentences imposed are affirmed.

All concur.