RENDERED: SEPTEMBER 30, 2021
MODIFIED: OCTOBER 1, 2021
MODIFIED: DECEMBER 16, 2021
TO BE PUBLISHED

# Supreme Court of Kentucky

2019-SC-0724-MR

ROGER DALE EPPERSON          APPELLANT


ON APPEAL FROM WARREN CIRCUIT COURT
HONORABLE STEVE ALAN WILSON, JUDGE
NO. 97-CR-00016

V.


COMMONWEALTH OF KENTUCKY          APPELLEE


**OPINION OF THE COURT BY JUSTICE CONLEY**

**<u>AFFIRMING</u>**

This case comes before the Court on appeal by Roger Epperson, the Appellant, of the Warren Circuit Court's denial of his RCr[1] 11.42, RCr 10.02, CR[2] 60.02, and CR 60.03 motion for relief. In that motion, Epperson argued *McCoy v. Louisiana,* 138 S.Ct. 1500 (2018), governed his claim that his attorney at trial conceded guilt against his expressed desire to maintain actual innocence of the crimes charged. The circuit court denied the motion, holding Epperson had already presented this claim, which this Court ruled upon in 2018; *Epperson v. Commonwealth,* No. 2017-SC-000044-MR, 2018 WL 3920226 (Ky. Aug. 16, 2018). Thus, the circuit court believed Epperson's claim

---

[1] Kentucky Rules of Criminal Procedure

[2] Kentucky Rules of Civil Procedure

was both substantively and procedurally improper. For the following reasons, we affirm.

## I. Factual and Procedural Background

After a second trial in 2003, Epperson was convicted of two counts of complicity to murder, first-degree robbery and first-degree burglary. He was sentenced to death for a second time.[3] The details of his crimes need not be recounted here. His conviction in 1996 was affirmed on direct appeal. *Epperson v. Commonwealth*, 197 S.W.3d 46 (Ky. 2006). He then proceeded with collateral attacks via RCr 11.42. Those claims were denied. *Epperson v. Commonwealth*, No. 2017-SC-000044-MR, 2018 WL 3920226 (Ky. Aug. 16, 2018). But, contemporaneously with the release of our initial Opinion on those issues, the Supreme Court of the United States announced its decision in *McCoy v. Louisiana*. Epperson filed a petition for rehearing so that we might consider *McCoy*'s impact, if any, on his claims. We granted the petition and addressed *McCoy*, noting the "facts that we have available in this record . . ." did not persuade us that *McCoy* was applicable. *Id.* at *12.

Epperson then filed a second RCr 11.42 motion and a CR 60.02 motion. He believed that this Court's 2018 Opinion left the door open for him to further develop the factual record regarding his *McCoy* claim. He filed an affidavit stating he desired an actual innocence defense at trial and communicated said

---

[3] Epperson's first trial was in 1987. He was convicted of two counts of murder and sentenced to death, but we reversed due to an error by the trial court during *voir dire.*

desire to his counsel prior to the start of the trial. He also stated he was not informed his counsel planned to concede he was involved with the crimes in any way or that they would elicit testimony he was present at the scene of the crime as a get-away driver. The specific allegations are his counsel (1) conceded guilt to burglary and robbery during closing arguments in the guilt phase of the trial, and (2) conceded guilt when he elicited testimony from a witness placing Epperson in the get-away vehicle.

The circuit court refused to conduct an evidentiary hearing and denied the motion. It held that our 2018 Opinion addressed the merits of the claim and therefore, was controlling law. The court also held, having already been ruled upon, it was procedurally improper to bring the claim again in a successive collateral attack. Epperson appealed as a matter of right.

We now address the merits of the appeal.

## II. Standard of Review

We apply *de novo* review to the circuit court's interpretation and application of our 2018 ruling in *Epperson v. Commonwealth*, as whether the law-of-the-case has been properly followed is a question of law. *Kincaid v. Johnson, True & Guarnieri, LLP*, 538 S.W.3d 901, 916-17 (Ky. App. 2017).

## III. Analysis

### A. The Interpretation and Application of *McCoy v. Louisiana*

*McCoy* stands for the rule that defense "counsel may not admit her client's guilt of a charged crime over the client's intransigent objection to that admission." *McCoy*, 138 S.Ct. at 1510. When such a concession occurs, there

3

is a structural error. *Id.* at 1511. Epperson argues for a broad reading of *McCoy* in that he does not believe an objection need be made on the record before the trial court. There is a structural error, in his view, when the desire for an actual innocence defense is expressed to counsel, and counsel subsequently disregards that desire by conceding any element of the offense. We do not read *McCoy* so sweepingly.

At the outset of *McCoy*, Justice Ginsburg reiterated the rule of *Florida v. Nixon,* 125 S.Ct. 551 (2006), that "when counsel confers with the defendant and the defendant remains silent, neither approving nor protesting counsel's proposed concession strategy[,]" there is no *per se* violation when the concession is made. 138 S.Ct. at 1505. She continued, "in contrast to *Nixon,* the defendant [McCoy] *vociferously* insisted that he did not engage in the charged acts and *adamantly objected* to any admission of guilt." *Id.* (emphasis added). Nevertheless, "the trial court permitted counsel, at the guilt phase of a capital trial, to tell the jury the defendant 'committed three murders. . . [H]e's guilty.'" *Id.* (internal citation omitted). This was done over McCoy's objection on the record.

From *McCoy*'s inception then, the Supreme Court emphasized the factual distinction between its ruling in that case and *Nixon*. Indeed, the Supreme Court further elucidated that difference in Part II B of its opinion. *Id.* at 1509-11. It specifically noted, "McCoy . . . opposed [his attorney's] assertion of his guilt at every opportunity, before and during trial, both in conference with his lawyer and in open court." *Id.* at 1509. The Supreme Court also noted of the

4

four state courts to have considered the issue, three had held "the defendant *repeatedly and adamantly* insisted on maintaining his factual innocence despite counsel's preferred course . . ." *Id.* at 1511 (emphasis added).

We do not think these several references to the "repeated," "adamant," and "vociferous" objections of the defendant at trial are meaningless. To the contrary, it is the decisive factual predicate used to distinguish *McCoy* from *Nixon.* Thus, *McCoy* did not abrogate or overrule *Nixon.* The two govern different scenarios. *McCoy* is controlling where defense counsel "admit[s] her client's guilt of a charged crime over the client's intransigent objection to that admission." *Id.* at 1510.

This conclusion is bolstered by the Supreme Court's reasoning regarding the constitutional injury suffered. Because the right to be protected is the "defendant's autonomy" to "make the fundamental choices about his own defense," "the violation of McCoy's protected autonomy right was complete *when the court allowed* counsel to usurp control of an issue within McCoy's sole prerogative." *Id.* at 1511 (emphasis added).[4] Therefore, "counsel's admission of a client's guilt over the client's express objection is error structural in kind." *Id.*[5]

---

[4] Again, we see the Supreme Court emphasizing the fact an objection to the trial court occurred.

[5] The Supreme Court's explicit holding that structural error only occurs where an attorney concedes guilt to the crime over their client's express objection means that absent such objection, prejudice must still be demonstrated. This comports with *Nixon*'s holding that "if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies

5

The requirement of an objection on the record is only logical. Should an attorney concede guilt to the charged crime, the trial court can only presume that such a concession is part of a legitimate and agreed upon strategy absent an objection from the defendant himself. It is absurd to suggest otherwise, as that would force the trial court to divine whether the defendant does in fact have an objection to a concession of guilt. A competent defendant, capable of assisting in his own defense, is also capable of lodging such an objection to the trial court. We will not interpret *McCoy* in such a way that allows a defendant to sleep on his rights and allege a structural error after his direct appeal has proven unsuccessful.

Finally, we do not believe, contra Epperson, that *McCoy* applies to a scenario in which an attorney concedes guilt as to one or more elements of a crime, rather than to the crime *in toto*. It is elementary that the Commonwealth must prove all elements of an offense beyond reasonable doubt. *Hammond v. Commonwealth*, 504 S.W.3d 44, 52 (Ky. 2016). Thus, it stands to reason that an attorney could concede guilt as to one or more elements of an offense and yet remain within the bounds of their client's stated objective of pursuing actual innocence. *McCoy*'s facts demonstrate this.

McCoy wished to pursue an actual innocence defense by denying he was even in Louisiana at the time the crime occurred. 138 S.Ct. at 1506. His counsel, English, disagreed. The following scenario occurred:

---

the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain." *Nixon*, 125 S.Ct. at 563.

6

> At the beginning of his opening statement at the guilt phase of the trial, English told the jury there was 'no way reasonably possible' that they could hear the prosecution's evidence and reach 'any other conclusion than Robert McCoy was the cause of these individuals' death.' McCoy protested; out of earshot of the jury, McCoy told the court that English was 'selling him out' by maintaining that McCoy 'murdered his family.' The trial court reiterated that English was 'representing' McCoy and told McCoy that the court would not permit 'any other outbursts.' Continuing his opening statement, English told the jury the evidence is 'unambiguous,' 'my client committed three murders.' McCoy testified in his own defense, maintaining his innocence and pressing an alibi difficult to fathom. In his closing argument, English reiterated that McCoy was the killer. On that issue, English told the jury that he 'took the burden off of the prosecutor.' The jury then returned a unanimous verdict of guilty of first-degree murder on all three counts. At the penalty phase, English again conceded 'Robert McCoy committed these crimes,' but urged mercy in view of McCoy's 'serious mental and emotional issues[.]' The jury returned three death verdicts.

*Id.* at 1506-07 (internal citations omitted). The Supreme Court noted English's trial strategy would have failed anyway because Louisiana prohibits "evidence of a defendant's diminished capacity absent the entry of a plea of not guilty by reason of insanity." *Id.* at 1506 n.1. Thus, English's several blatant admissions that McCoy had committed murder could only have the legal effect of conceding guilt to the crime charged.

Additionally, the Supreme Court highlighted the difference between conceding elements of the offense and the crime charged. In citing to the three state court decisions previously mentioned, the Supreme Court noted that the defendants in those cases "repeatedly and adamantly insisted on maintaining [their] factual innocence . . ." despite their counsel's belief otherwise. *Id.* at 1510. Instead, their lawyers wanted to pursue other defenses like diminished capacity, mental illness, and lack of premeditation. *Id.* Justice Ginsburg

explained, "[t]hese were not strategic disputes about whether to concede an element of a charged offense, [but] were intractable disagreements about the fundamental objective of the defendant's representation." *Id.* (internal citation omitted).

Therefore, we discern an intent to distinguish between strategic disputes about conceding an element of an offense as opposed to an attorney's concession of guilt to the crime charged and subsequent hope for leniency from the jury. This interpretation comports with the facts and reasoning of *McCoy.*

## B. Our Prior Ruling in *Epperson v. Commonwealth*

In 2018, our initial impression of *McCoy*'s application to Epperson's case was stated thusly,

> We highlight in detail the factual circumstances of *McCoy* because the factual circumstances in the case at hand are very different. On the facts that we have available in this record, nothing of the sort that occurred in *McCoy* occurred in Epperson's case. As discussed in our analysis of Epperson's 'inconsistent defenses' argument, counsel for Epperson simply suggested to the jury that Epperson's involvement in this case, if any, was driving the getaway car. Epperson claims that counsel elicited evidence on this fact during cross-examination of a witness and then told the jury in closing argument that Epperson had driven the getaway car. This fact, and this fact alone, is the only fact that Epperson points to in the entirety of his argument on this point.

> Epperson has not evidenced 'intransigent' or 'vociferous' objection to trial counsel's strategy, nor has he evidenced objection to trial counsel's strategy 'at every opportunity, before and during trial, both in conference with his lawyer and in open court.' More importantly, it does not appear that counsel ever explicitly conceded guilt on any of Epperson's charges but rather stated that Epperson may have been or was the getaway driver during the commission of the crimes. This concession does not appear to be the type of concession upon which *McCoy's* holding is predicated.

8

And even if it were, the lack of evidentiary and factual support for Epperson's claim leads us to the conclusion that it is meritless.

*Epperson,* 2018 WL 3920226, at *12 (internal citations omitted). We see no compelling reason to depart from this holding now.

As we held, *McCoy* only controls when there is an "intransigent objection" on the record. *McCoy,* 138 S.Ct. at 1510. The circuit court below was correct in refusing to hold an evidentiary hearing because it is unnecessary to hear testimony to prove that fact. Merely citing to the record where such objections occurred would suffice. Epperson has not done that because he did not make any such objection. *McCoy* simply is not applicable to his case.[6]

We also believe that our initial impression of the specific objections made by Epperson remain correct. Again, an evidentiary hearing is unnecessary to determine if Epperson's counsel did in fact concede guilt. Epperson has not presented anything new which demonstrates there was a concession of guilt to the crime charged.

## IV. CONCLUSION

Epperson's second RCr 11.42 motion did not put forth any new facts or law that was not known to us when we issued our ruling in 2018. The circuit court therefore correctly ruled that *Epperson v. Commonwealth* was controlling law-of-the-case. We also believe it was correct to rule the motion was an impermissible successive collateral attack. We find no merit in Epperson's argument that he was deprived of an impartial judge because the judge

---

[6] Hence, we need not decide whether *McCoy* is retroactive.

9

adopted the Commonwealth's arguments as its own. The Warren Circuit Court is affirmed.

All sitting. Hughes, VanMeter, and Lambert, JJ. concurring. Minton, C.J., concurs in result only by separate opinion in which Keller and Nickell, JJ. join.

MINTON, C.J., CONCURRING IN RESULT ONLY: I concur with the majority's decision to affirm the circuit court's denial of Epperson's RCr 11.42 motion. Based on our 2018 decision in which we concluded that Epperson's counsel did not explicitly concede guilt to any offense, like the majority, I believe that his trial counsel instead presented a trial strategy with which Epperson now avers he did not agree. However, I concur in result only because I disagree with the majority's conclusion that Epperson's claim is now procedurally barred under *McCoy v. Louisiana*. In my view, *McCoy* does not necessarily require a contemporaneous objection to defense counsel's presentation of his defense at trial. Instead, its holding is that a defendant's "autonomy to decide that the objective of the defense is to assert innocence" is sacrosanct. Any violation of this autonomy is a structural error. In applying *McCoy* to the present case, the majority correctly finds Epperson failed to make a record of his objections to counsel's presentation at trial. But, I find that a post-conviction proceeding in which a violation of the defendant's autonomy is directly at issue, such as in an ineffective assistance of counsel hearing, would be an additional time for a defendant to raise the fact that his trial counsel conceded guilt against his explicit wishes.

10

Keller and Nickell, JJ., join.

COUNSEL FOR APPELLANT:

David M. Barron
Assistant Public Advocate
Dept. of Public Advocacy


COUNSEL FOR APPELLEE:

Daniel Cameron
Attorney General of Kentucky

Robert Baldridge
Assistant Attorney General

# Supreme Court of Kentucky

## 2019-SC-0724-MR

ROGER DALE EPPERSON                                          APPELLANT

                ON APPEAL FROM WARREN CIRCUIT COURT
V.                 HONORABLE STEVE ALAN WILSON, JUDGE
                          NO. 97-CR-00016

COMMONWEALTH OF KENTUCKY                      APPELLEE

## ORDER GRANTING MODIFICATION OF RENDERED OPINION

The Petition for Modification, filed by the Appellee, of the Opinion of the Court, rendered September 30, 2021, is GRANTED. The Opinion of the Court is modified on its face by substitution of the attached opinion in lieu of the original opinion. Said correction does not affect the holding of the original Opinion of the Court. The correction is made only to reflect an incorrect date on page 2 of the Opinion.

All sitting. All concur.

ENTERED: December 16, 2021

_____
CHIEF JUSTICE