Alexander **RANKIN**, Appellant,

v.

**COMMONWEALTH of Kentucky,** Appellee.

No. 2006–CA–000721–MR.

Court of Appeals of Kentucky.

Sept. 14, 2007.

Discretionary Review Denied by Supreme Court Oct. 15, 2008.

Richard Meena, Jr., Kevin C. Burke, Louisville, KY, for appellant.

Gregory D. Stumbo, Attorney General of Kentucky, Wm. Robert Long, Jr., Assistant Attorney General, Frankfort, KY, for appellee.

Before DIXON, HOWARD, and THOMPSON, Judges.

## OPINION

THOMPSON, Judge.

Alexander Rankin appeals his conviction in the Jefferson Circuit Court for intimidating a participant in the legal process. Having concluded that the trial court did not commit prejudicial error, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On April 23, 2005, Dominique Spurley, Timothy Bailey, and three other individuals allegedly entered a dwelling in Louisville, Kentucky. In addition to taking several items from the dwelling, the group stole the dwelling owner's automobile which was parked in the driveway. Later that evening, Spurley and his group allegedly met Rankin and transactions regarding the stolen items took place.

On May 14, 2005, Rankin and another individual allegedly called the residence of Lillie Muir, the grandmother of Timothy Bailey, and asked to speak with Bailey, who had been living in the residence. According to the testimony of Muir, when she denied the request, the two callers stated that Bailey was a drug dealer, that he would be "tried as an adult," and that he would be going to jail. The callers concluded by saying that "we'll just do a drive-by and see how you like that," at which time Muir ended the conversation by hanging up the telephone. Muir called the police the next morning to report the phone call but was unable to identify the individuals who made the call.

Two months later, Rankin was pulled over by Louisville Metro Police Officer Ryan Frederick for failing to signal while changing lanes. Remembering Rankin's name from a conversation with Detective Luckett, Frederick called Luckett and asked if he wanted to speak with Rankin. After Luckett answered yes, Frederick approached Rankin and asked if he would volunteer to speak with Luckett regarding an ongoing criminal investigation. After Rankin agreed, Frederick followed Rankin to the police station and escorted him to a room where Luckett was waiting.

Before questioning him and without reading him his *Miranda* rights, Luckett informed Rankin that he was free to leave whenever he desired and that he could contact his lawyer. During questioning, Rankin admitted to making the phone call to the Muir residence but denied making any threats against anyone. Later, Rankin said that if threats were made, he was just joking. At the conclusion of the interview, Rankin left the police station.

On August 4, 2005, a Jefferson County grand jury indicted Rankin for burglary in the second degree, unlawful transaction with a minor in the second degree, receiving stolen property, intimidating a participant in the legal process, and tampering with a witness. Subsequently, he moved to suppress his statement to Luckett on the basis that it was obtained in violation of his Fifth Amendment rights pursuant to *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

At the suppression hearing, after hearing the testimony of Frederick and Luckett, the trial court denied Rankin's motion to suppress his statements to Luckett. In its ruling from the bench, the trial court stated that the defendant's Fifth Amendment rights were not implicated at the time of his questioning because he had not been in police custody.

On January 25, 2006, Rankin's trial began. After the Commonwealth presented its case-in-chief, Rankin successfully moved for a directed verdict of acquittal on the charges of burglary and unlawful transaction with a minor. After deliberating on the three remaining charges, the jury found Rankin not guilty of receiving stolen property and tampering with a witness but found him guilty of intimidating a participant in the legal process.

The trial court sentenced Rankin to one year imprisonment which was probated for five years, a fine of $1,000 and assessed costs and fees totaling $625. This appeal followed.

On appeal, Rankin raises six allegations of error: (1) that the trial court erred when it denied his motion for a directed verdict of acquittal to the charge of intimidating a participant in the legal process; (2) that the trial court erred by giving jury instructions that did not conform to the evidence; (3) that the trial court erred by denying his motion to suppress his statements to police; (4) that the trial court erred by denying his motions for a mistrial; (5) that numerous acts of prosecutorial misconduct denied him a fair trial; and (6) that the cumulative error rule warrants the reversal of his conviction because of the aggregate impact of numerous errors. We will address each issue in turn.

## II.  ANALYSIS

### A.  CLAIM THAT THE TRIAL COURT ERRED WHEN IT DENIED HIS MOTION FOR A DIRECTED VERDICT OF ACQUITTAL.

Rankin's first allegation is that the trial court erred when it failed to grant his directed verdict motion to the charge of intimidating a participant in the legal process. Rankin makes four specific arguments in support of this allegation of er-

ror: (1) that the statements made to Muir did not constitute a threat under KRS 524.040; (2) that the alleged threat was made against Muir, a non-participant, and not Bailey; (3) that the alleged threat was not made to interfere with the legal process; and (4) that the evidence was insufficient to conclude that Rankin made the threatening phone call.

On appellate review of a motion for directed verdict, we review the sufficiency of the evidence to support Rankin's conviction for intimidating a participant in the legal process under the standard articulated in *Commonwealth v. Benham,* 816 S.W.2d 186 (Ky.1991). In *Benham,* 816 S.W.2d at 187, the court held that:

> On motion for directed verdict, the trial court must draw all fair and reasonable inferences from the evidence in favor of the Commonwealth. If the evidence is sufficient to induce a reasonable juror to believe beyond a reasonable doubt that the defendant is guilty, a directed verdict should not be given. For the purpose of ruling on this motion, the trial court must assume that the evidence for the Commonwealth is true, but reserv[e] to the jury questions as to the credibility and weight to be given to such testimony.

> On appellate review, the test of a directed verdict is, if under the evidence as a whole, it would be clearly unreasonable for a jury to find guilt, only then the defendant is entitled to a directed verdict of acquittal.

Having set forth the standard of review, we turn to Rankin's four arguments.

■ Rankin first argues that his statements to Muir did not rise to the level of a threat as contemplated by KRS 524.040.

Rankin asserts that his statements, in which he allegedly threatened doing a drive-by, did not constitute a threat to kill or physically injure when viewed in light of all the facts. We disagree.

Based on the facts of this case, it was not clearly unreasonable for a jury to find Rankin guilty of the requisite threat under KRS 524.040. When put in context of the other statements directed against Bailey, although Rankin did not use the phrase "drive-by shooting," a jury could have reasonably believed that the statement "do a drive-by" was intended as a threat of bodily injury or death.

■ Rankin next argues that if a threat was made that it was directed at Muir, a non-participant, and not Bailey. In support of this argument, Rankin argues that Muir specifically testified that the phone threat was made to her. Consequently, Rankin alleges that he could not be convicted for intimidating a participant in the legal process because Muir, who he alleges that he threatened, was not a "participant" under KRS 524.010(3).[1]

Although Rankin argues that his threat was against Muir, we disagree and adhere to the factual findings of the jury. All of Rankin's statements were made against Bailey. Certainly, from these facts, it was not unreasonable for a jury to conclude that the threat of a "drive-by" was directed at Bailey as well.

Rankin next argues that he was entitled to a directed verdict because the alleged threat was made as a result of Muir's refusal to permit him to speak to Bailey, and not to intimidate and interfere with Bailey's participation in the legal process. While this may be a plausible reason for the threat, a jury could reasonably con-

---

1. KRS 524.010(3) provides a " '[p]articipant in the legal process' means any judge, prosecutor, attorney defending a criminal case, ju-

ror, or witness and includes members of the participant's immediate family."

clude that the threat was made for a more sinister motive. Because Rankin knew that Bailey was a potential witness that could testify about his involvement in the burglary and related offenses, it was not unreasonable for a jury to conclude that Rankin's statement was made to intimidate Bailey.

■ Rankin's final argument is that there was no evidence that he made the threatening call to the Muir residence. However, the evidence established otherwise. Muir testified that she received a threatening phone call, and Rankin admitted to making it. We conclude that this evidence was sufficient to support his conviction.

## B. CLAIM THAT THE TRIAL COURT ERRED WHEN IT IMPROPERLY INSTRUCTED THE JURY.

Rankin's second allegation of error is that the trial court improperly instructed the jury. First, Rankin argues that the jury instructions created a different charge than the charge stated in his indictment. Rankin alleges that the indictment provided that Rankin directed a threat to Timothy Bailey; however, the jury instruction provided that the threat was directed at Muir.

Second, Rankin argues that the jury instruction improperly stated that the caller threatened a "drive-by shooting" when there was no evidence the word "shooting" was stated by the caller. Finally, Rankin argues that the instructions gave undue prominence to certain facts including Bailey's living arrangement, the facts underlying the burglary, and a description of the caller's threat.

■ "Kentucky follows the 'bare bones' principle with respect to jury instructions." *Hodge v. Commonwealth,* 17 S.W.3d 824, 850 (Ky.2000). Instructions should not overemphasize particular aspects of the evidence because evidentiary matters should be left to the lawyers to flesh out during closing arguments. *Id.* Finally, jury instructions must be based upon and be in accordance with the evidence presented during trial. *Howard v. Commonwealth,* 618 S.W.2d 177, 178 (Ky. 1981).

■ After applying the law to the facts, we conclude that the trial court improperly instructed the jury. The trial court should not have included the word "shooting" in the instructions because there was no evidence that the caller said the word "shooting." The jury instruction should have only included the word "drive-by," and the lawyers should have been left with the task of arguing whether "drive-by" meant "drive-by shooting."

■ Because the trial court erred by including the word "shooting" in the instructions, we must apply harmless error analysis and "disregard any error or defect in the proceeding that does not affect the substantial rights of the parties." RCr 9.24. "Under the harmless error doctrine, if upon consideration of the whole case it does not appear that there is a substantial possibility that the result would have been any different, the error will be held nonprejudicial." *Gosser v. Commonwealth,* 31 S.W.3d 897, 903 (Ky.2000), citing *Abernathy v. Commonwealth,* 439 S.W.2d 949, 952 (Ky.1969).

After applying this analysis, we conclude that the trial court's error was not prejudicial. Rankin could have only been found guilty if the jury inferred that doing a "drive-by" meant doing a "drive-by shooting." By using the term drive-by shooting, the trial court simply put the question of whether Rankin's intent was to threaten a "drive-by shooting" or not directly before the jury. This was the same issue that

was argued in closing arguments. Accordingly, even without this error, there is no substantial possibility that the outcome of this case would have been any different.

We disagree with Rankin's other two arguments. First, the indictment and the jury instructions make clear that the criminal offense was the threatening of Bailey and not Muir. Second, the jury instructions do not unduly promote certain facts because they only contained the relevant facts constituting the offense.

## C. CLAIM THAT THE TRIAL COURT ERRED WHEN IT DENIED HIS MOTION TO SUPPRESS.

Rankin's next allegation is that the trial court erred when it denied his motion to suppress the statements he made to Detective Luckett. Specifically, he alleges that the statements were obtained in violation of his Fifth Amendment rights under the United States Constitution. Rankin alleges that Luckett was obligated to *mirandize* him prior to questioning him regarding a criminal investigation because Luckett's questioning constituted a custodial interrogation.

The Fifth Amendment requires that a suspect, who is being subjected to custodial interrogation, be informed of his *Miranda* rights. *Commonwealth v. Lucas*, 195 S.W.3d 403, 405 (Ky.2006). A custodial interrogation has been defined as questioning initiated by police after a person has been taken into custody or otherwise deprived of freedom of action in any significant way. *Id.* Custody occurs when police, by some form of physical force or show of authority, have restrained the liberty of an individual. *Baker v. Commonwealth*, 5 S.W.3d 142, 145 (Ky.1999).

To determine whether an individual's liberty has been restrained, the test is whether, considering the surrounding circumstances, a reasonable person would have believed that he or she was not free to leave. *Id.* A custodial interrogation takes place which implicates an individual's Fifth Amendment right against self-incrimination only when a reasonable person would have believed that he or she was not free to leave. *Id.*

We conclude that the circumstances of this case indicate that Rankin's Fifth Amendment rights were not implicated because he was not in custody when questioned. After Rankin was stopped for a traffic violation, Frederick asked Rankin if he would volunteer to accompany him to the police station to speak with Luckett about a criminal investigation. Rankin then volunteered to come to the police station to meet with Luckett. At the station, Luckett informed him that he was free to go whenever he desired and that he could contact his lawyer. After the questioning, Rankin left the police station.

Based on these facts, we conclude that the trial court correctly ruled that Rankin was not in custody during his questioning. A reasonable person would have believed that he was free to leave during Luckett's questioning. Because Rankin was not in custody, Luckett's failure to inform Rankin of his *Miranda* rights did not invalidate Rankin's confession.

## D. CLAIM THAT THE TRIAL COURT ERRED BY DENYING HIS TWO MOTIONS FOR MISTRIAL.

Rankin's fourth allegation of error is that the trial court erred by denying his two motions for mistrial because of the Assistant Commonwealth's Attorney's misrepresentations of law and fact during voir dire and closing arguments. First, Rankin alleges that the Commonwealth made an incorrect statement of the law during voir dire when it told the veniremen that if the trial court fails to direct a verdict then the

Commonwealth has met its burden beyond a reasonable doubt on that charge.

Rankin also argues that the Commonwealth misrepresented the state of the evidence during its closing argument when it told the jury, as a matter of fact, that the telephone number on Muir's caller ID belonged to Rankin. Yet, there were no witnesses who could identify the number on Muir's caller ID as belonging to Rankin.

■■■■■ Whether or not to grant a mistrial is within the sound discretion of the trial court, and the trial court's ruling will not be disturbed unless its ruling constitutes an abuse of discretion. *Woodard v. Commonwealth,* 147 S.W.3d 63, 68 (Ky. 2004). Moreover, a mistrial is an extreme remedy and should be utilized only when there appears in the record a manifest necessity for such action. *Clay v. Commonwealth,* 867 S.W.2d 200, 204 (Ky.App. 1993). The error must be "of such character and magnitude that a litigant will be denied a fair and impartial trial and the prejudicial effect can be removed in no other way [except by granting a mistrial]." *Gould v. Charlton Co., Inc.,* 929 S.W.2d 734, 738 (Ky.1996).

As to the allegation that the Commonwealth misrepresented the law, Rankin objected to the Commonwealth's characterization of the directed verdict standard, and the trial court agreed by sustaining his objection and request for an admonition. During a bench conference, the trial court decided, and Rankin agreed, that the trial court would give the admonition immediately after a jury was empaneled. The trial court instructed Rankin to remind it at that time; the jury was empaneled, however, with no mention of the admonition from Rankin.

At the close of the proof, Rankin reminded the court about admonishing the jury regarding the correct standard for a directed verdict. After considering the request, the trial court agreed to give an admonition but expressed reservations about the negative impact on Rankin that an admonition could create. Heeding the trial court's considerations and with its approval, Rankin chose to address the directed verdict issue during his closing argument. He sought no further curative measures.

■■■ In *Johnson v. Commonwealth,* 105 S.W.3d 430, 441 (Ky.2003), the court held that a defendant cannot seek additional relief when a trial court attempts to cure an error are accepted by a defendant without any request for additional curative measures. When a defendant by his own action accepts the trial court's curative action as adequate by not requesting additional curative measures, the defendant cannot complain that the trial court erred. *Id.* Because Rankin agreed with the trial court's approach and did not request any further curative measures, he received all the relief that he requested; thus, there is no error to review. *Id.*

■■■ As to the Commonwealth's misstatement of fact, during a bench conference, the trial court sustained Rankin's objection to the Commonwealth's factual assertion that Muir's caller ID established that Rankin had been the caller. However, the trial court denied Rankin's motion to admonish the jury but ordered the Commonwealth to restate the facts without repeating the misrepresentation that Muir's caller ID had been proven to display a number belonging to Rankin.

After reviewing the facts, we conclude that the trial court erred by not giving an admonition. The Commonwealth's factual assertion was not based on the evidence in the record and served no purpose but to improperly influence the jury. *Barnes v. Commonwealth,* 91 S.W.3d 564, 568 (Ky.

2002). However, the trial court did require the Commonwealth to correct its misrepresentation and the Commonwealth complied.

■ Although the trial court did not give an admonition, in light of the court's action, we conclude that the Commonwealth's misrepresentation was not of such character and magnitude that Rankin was denied a fair and impartial trial. *Gould*, 929 S.W.2d at 738. Ultimately, during their closing arguments, Rankin and the Commonwealth made clear that no witness had positively identified Rankin's telephone number as the number found on Muir's caller ID; thus, the trial court's denial of his motion for a mistrial did not deprive him of a fair trial.

### E. CLAIM THAT NUMEROUS ACTS OF PROSECUTORIAL MISCONDUCT DEPRIVED HIM OF A FAIR TRIAL.

Rankin's fifth allegation of error is that the trial court erred throughout his trial when it failed to adequately address numerous instances of prosecutorial misconduct. Rankin alleges specific instances of prosecutorial misconduct as follows: (1) the Commonwealth's misrepresentation of the law during voir dire; (2) the Commonwealth's misrepresentations that Rankin threatened a "drive-by shooting"; (3) the Commonwealth's "eleventh hour" notice to him regarding a police report allegedly containing Rankin's telephone number from Muir's caller ID; and (4) the Commonwealth's misrepresentation of the evidence during closing argument while the presiding judge was absent.

■ When an appellate court reviews claims of prosecutorial misconduct, we must focus on the overall fairness of the trial and may reverse a conviction only if the prosecutorial misconduct was so improper, prejudicial, and egregious as to

have undermined the overall fairness of the proceedings. *Brewer v. Commonwealth*, 206 S.W.3d 343, 349 (Ky.2006).

We first note that we have previously addressed Rankin's allegations regarding the Commonwealth's misrepresentation of law during voir dire and the use of the word "shooting" during the trial. Having concluded that these issues were not prejudicial, we will not further address these claims.

■ Rankin also alleges that the Commonwealth untimely informed him that a conflict existed between a police officer's report provided in discovery and a police officer's notes that were not provided in discovery. Apparently, the telephone number found on the caller ID was correctly listed in the officer's notes but he erroneously transcribed the number into his police report.

Despite this fact, the Commonwealth's delay in notifying Rankin regarding the inconsistency between the officer's notes and report did not undermine the overall fairness of this case. Rankin was able to adequately cross-examine the officer on his mistake. Moreover, both the Commonwealth and Rankin informed the jury that no individual who knew Rankin's telephone number had testified that Rankin's number was found on Muir's caller ID. Consequently, the fact that Rankin was untimely informed of the inconsistencies between the two telephone numbers was not material to his case.

Finally, Rankin alleges that the Commonwealth misrepresented the evidence while the presiding judge was absent from the courtroom. After reviewing the videotape record, Judge Geoffrey Morris, the regular trial judge, presided over the trial from its beginning through Rankin's closing argument. However, after Rankin's closing argument, Judge Morris was called away for personal matters and a substitute judge took his seat on the bench.

The videotape record makes clear that a judge presided over the trial at all times and no interaction between the Commonwealth and the jury took place outside the presence of the trial court. Because Rankin is factually incorrect, there is no error to review.

F. CLAIM THAT CUMULATIVE ERROR IN HIS TRIAL DEPRIVED HIM OF HIS RIGHT TO A FAIR TRIAL.

Rankin's final allegation of error is that the cumulative impact of all the errors in his case denied him a fair trial and warrants the reversal of his conviction. However, this argument is without merit. We have extensively reviewed each of his allegations of error and conclude that Rankin received a fundamentally fair trial devoid of any state or federal constitutional violations. *Epperson v. Commonwealth,* 197 S.W.3d 46, 66 (Ky.2006).

For the foregoing reasons, the judgment of the Jefferson Circuit Court is affirmed.

ALL CONCUR.