RENDERED: APRIL 22, 2010
NOT TO BE PUBLISHED

# Supreme Court of Kentucky

2008-SC-000763-MR

FINAL

DATE 5-13-10 *Kelly Klober* D.C.

JAMES KENT CONN                                       APPELLANT

V.

ON APPEAL FROM ROWAN CIRCUIT COURT
HONORABLE WILLIAM B. MAINS, JUDGE
NO. 08-CR-00018

COMMONWEALTH OF KENTUCKY                     APPELLEE

## MEMORANDUM OPINION OF THE COURT

## AFFIRMING

Appellant, James Kent Conn, was found guilty by a Rowan Circuit Court jury of murder. For this crime, Appellant was sentenced to forty-five years imprisonment. He now appeals his conviction as a matter of right. Ky. Const. § 110(2)(b).

### I. Background

On October 5, 2007, Appellant's son, James Brent Conn, was found dead in a South Florida motel room. Brent had traveled to Florida in the company of Tim Riggs where the two planned to obtain prescription pills from a local pain clinic. According to Riggs, Brent was alone drinking alcohol and ingesting pills when Riggs left for a bar with his girlfriend. The next morning, Brent could not be awakened. His cause of death was later determined as a drug overdose – a fact of which Appellant claimed he was unaware.

Appellant became convinced that Riggs was somehow to blame for his son's death. His suspicions were stoked when Brent's mother, Cynthia, relayed what she believed were Riggs' inconsistent accounts of what had happened. Over the ensuing weeks, Appellant began to make threats on Riggs' life to those around him. Riggs eventually learned that Appellant thought him responsible for Brent's death and that his life was in danger.

On the night of October 29, 2007, Appellant and his wife, Katherine, drove from their home in Pigeon Forge, Tennessee to Riggs' home in Rowan County, Kentucky. Once there, Appellant, armed with a handgun, exited his vehicle and confronted Riggs outside of his trailer. Katherine heard Appellant ask Riggs whether his name was "Tim" before, according to Appellant, Riggs charged at him with a knife and Appellant fired. Appellant returned to his vehicle and proceeded to drive back to his home in Pigeon Forge, disposing of the firearm in the process. Riggs was later found dead in his neighbor's yard with a fatal gunshot wound to his chest.

At trial, Appellant admitted that he drove to Riggs' home armed with a handgun and later left the scene without notifying police. He claimed, however, that he only intended to speak with Riggs regarding his son's death and only fired when he believed that his life was in danger from Riggs' attempted knife attack. Other witnesses could not corroborate Appellant's version of events.

At the conclusion of trial, the jury rejected Appellant's claim of self-defense and found him guilty of murder, fixing his punishment at forty-five years imprisonment. On appeal, Appellant raises three allegations of error in his underlying trial: 1) that the trial court erroneously denied him the opportunity to depose witnesses prior to trial; 2) that the trial court erroneously admitted hearsay; and 3) that he was entitled to an extreme emotional disturbance instruction. For the reasons that follow, we affirm Appellant's conviction.

## II. Analysis

### A. RCr 7.10 Depositions

Appellant first argues that the trial court erred in denying his request to take pretrial depositions that were relevant to his claim of extreme emotional disturbance. We cannot agree.

Prior to trial, Appellant filed a motion to take the deposition of several Florida residents: two police officers and a medical examiner in Broward County. In the accompanying affidavit of materiality, Appellant argued that the witnesses possessed knowledge that was relevant to his claim of extreme emotional disturbance and, generally, to both his and Riggs' state of mind.[1] The Commonwealth opposed the motion and contended that the underlying Florida police and autopsy reports documenting Brent Conn's death were

---

[1] In particular, the affidavit indicated that both police officers would testify that Riggs stated that Brent Conn had been drinking prior to his death (in spite of the fact that no alcohol was found in his system) and that no part of some $2,000 in cash (thought to be in Brent's possession) was found during their investigation. The affidavit also stated that the Broward County medical examiner had a conversation with Appellant regarding Brent's death.

irrelevant to Riggs' death. The trial court, in a written order, denied Appellant's motion.

RCr 7.10(1) provides that, upon motion and notice to the parties, a trial court may order a witness's testimony be taken by deposition "[i]f it appears that": (1) the "witness may be unable to attend or is or may be prevented from attending a trial or hearing or is or may become a nonresident of the Commonwealth"; (2) "that the witness's testimony is material"; (3) "and that it is necessary to take the witness's deposition in order to prevent a failure of justice." The trial court's determination in this regard is left to its sound discretion. *Lovett v. Commonwealth*, 103 S.W.3d 72, 82 (Ky. 2003). Accordingly, we review for an abuse of discretion, asking "whether the trial judge's decision was arbitrary, unreasonable, unfair, or unsupported by sound legal principles." *Commonwealth v. English*, 993 S.W.2d 941, 945 (Ky. 1999) (citation omitted).

Having reviewed the affidavit, we do not believe that the trial court abused its discretion in denying Appellant's motion. The materiality of the officers' testimony to Appellant's claim of extreme emotional disturbance was unclear, as it does not appear that Appellant *knew* of the officers' findings prior to his shooting and killing Riggs. *See McClellan v. Commonwealth*, 715 S.W.2d 464, 469 (Ky. 1986) ("[A]n enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation . . . *which is to be determined from the viewpoint of a person in the*

4

*defendant's situation under circumstances as defendant believed them to be.")* (emphasis added). In the same vein, the affidavit did not indicate the subject and time of Appellant's conversation with the medical examiner which could have established its relevance to his claim. In any event, Appellant made absolutely no showing that the court-ordered depositions were necessary to prevent a failure of justice.[2]

### B. Inadmissible Hearsay

Appellant next argues that he was prejudiced by the trial court's erroneous admission of hearsay evidence. We briefly address each contention, as they lack merit.

A fundamental rule in the law of evidence is that hearsay evidence is inadmissible evidence. "An out of court statement offered, in court, to prove the truth of the matter asserted is not admissible unless it meets one of our well established exceptions." *Wells v. Commonwealth*, 892 S.W.2d 299, 301 (Ky. 1995).

Though Appellant first takes issue with statements by Detective Hall to the effect that Appellant made prior threats against Riggs, his objection was sustained and Appellant did not request an admonition or further relief. "When a defendant by his own action accepts the trial court's curative action as adequate by not requesting additional curative measures, the defendant

---

[2] We note that Appellant retained private counsel and could have availed himself of KRS 421.250 in order to procure the witnesses in question.

cannot complain that the trial court erred." *Rankin v. Commonwealth*, 265 S.W.3d 227, 235 (Ky. App. 2007) (*citing Johnson v. Commonwealth*, 105 S.W.3d 430, 441 (Ky. 2003)).

Appellant similarly argues that Katie McKinney impermissibly testified to his prior threats toward Riggs. Appellant concedes, however, that he did not object to the statements and, moreover, he provides no citation to the record for his allegation of error. *See Copely v. Commonwealth*, 854 S.W.2d 748, 750 (Ky. 1993) ("This Court will not search the record in order to find error which counsel has failed to present.") (*citing Young v. Newsome*, 462 S.W.2d 908 (Ky. 1971)).

Appellant's final arguments are not preserved by objection. At trial, Detective Gardner testified that he had heard through Roy Conn (Appellant's nephew) that Appellant was going to travel to Rowan County to "take care of business." Gardner also testified that Mike Conn (Appellant's brother) told him about a prior confrontation between Appellant and Darrell Logan, in which Appellant mistook him for Riggs. In addition, Jeff Fraley (a friend of Appellant) testified that he had heard through Mike Conn that Appellant would be coming to Rowan County to kill Riggs.

We find no palpable error in this regard. "In order to demonstrate an error rises to the level of palpable error [pursuant to RCr 10.26], the party claiming palpable error must show a 'probability of a different result or [an] error so fundamental as to threaten a defendant's entitlement to due process of

6

law.'" *Allen v. Commonwealth,* 286 S.W.3d 221, 226 (Ky. 2009) (*quoting Martin v. Commonwealth,* 207 S.W.3d 1, 3 (Ky. 2006)).

The Commonwealth properly introduced the testimony of Gardner and Fraley for impeachment purposes. *See* KRE 801(A)(a)(1). At trial, both Roy and Mike Conn, the Commonwealth's witnesses, testified that they could not recall making prior statements indicating that Appellant had threatened Riggs' life. It is well-settled that "the credibility of any witness, *including one's own witness,* may be impeached by showing that the witness has made prior inconsistent statements." *Wise v. Commonwealth,* 600 S.W.2d 470, 472 (Ky. App. 1978) (emphasis added). "A statement is inconsistent . . . whether the witness presently contradicts or denies the prior statement, or whether he claims to be unable to remember it." *Brock v. Commonwealth,* 947 S.W.2d 24, 27 (Ky. 1997) (*citing Wise,* 600 S.W.2d at 472).

### C. Extreme Emotional Disturbance Instruction

Appellant's final contention is that the trial court erred in failing to include an instruction pertaining to extreme emotional disturbance (EED) as an element of the jury's murder instruction. We cannot agree, as the evidence did not support such an instruction.

A defendant cannot be convicted of intentional murder if he acted under the influence of extreme emotional disturbance. *See generally* KRS 507.020(a). This Court has defined EED as "a temporary state of mind so enraged, inflamed, or disturbed as to overcome one's judgment, and to cause one to act

7

uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *McClellan*, 715 S.W.2d at 468-69. It must be noted that:

> [EED] is not a mental disease in itself, and an enraged, inflamed, or disturbed emotional state does not constitute an extreme emotional disturbance unless there is a reasonable explanation or excuse therefor, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under circumstances as defendant believed them to be.

*Id.* at 469.

In order to justify an instruction for EED, there must be some evidence suggesting an extreme emotional disturbance, "'thereby affording room for reasonable doubt.'" *Greene v. Commonwealth*, 197 S.W.3d 76, 81 (Ky. 2006) (*quoting Gall v. Commonwealth*, 607 S.W.2d 97, 109 (Ky. 1980)). Indeed, "[i]f the evidence, viewed in the light most favorable to the Commonwealth, is found sufficient, *it is for the jury to find whether or not the defendant acted under extreme emotional disturbance.*" *Benjamin v. Commonwealth*, 266 S.W.3d 775, 782 (Ky. 2006) (emphasis in original) (*citing Greene*, 197 S.W.3d at 82). The effect of such an instruction is that the absence of extreme emotional disturbance becomes a statutory element of the offense. *Id.* (*citing Greene*, 197 S.W.3d at 81); *see also Holland v. Commonwealth*, 114 S.W.3d 792, 805 n.16 (Ky. 2003).

The trial court rightly concluded that the evidence did not support Appellant's tendered EED instruction. Appellant offered no evidence that he

was under the influence of extreme emotional disturbance at any time. While it is true that he was distraught and perhaps angry over his son's death,[3] there was no evidence that his judgment was so overcome with emotion that he acted uncontrollably in shooting and killing Riggs. Indeed, Appellant's own testimony undercut such an inference, as he claimed that he drove several hours to Riggs' trailer from Tennessee in order to simply "get answers" and that, once there, he fired in self-defense. In any event, Riggs' murder occurred twenty-four days after Brent's death and twenty-two days after Appellant first suspected that Riggs was to blame, representing, under these circumstances, a length of time likely dissipating the effect of any initial emotional disturbance and rendering unreasonable any claimed explanation or excuse. *See Benjamin*, 266 S.W.3d at 782-83 (the "provocation adequate to induce an EED analysis must be sudden and uninterrupted" and "there exists a 'subsidiary inquiry' as to whether there intervened between the provocation and the homicide a cooling-off period sufficient enough to preclude a conclusion that the provocation was adequate.") (citations omitted). Thus, Appellant's claim lacks merit.

## III. Conclusion

Therefore, for the above stated reasons, we hereby affirm Appellant's conviction and sentence.

All sitting. All concur.

---

[3] Appellant testified that, in his grief, he heard voices, including his son saying, "Daddy, help me."

COUNSEL FOR APPELLANT:

Linda Roberts Horsman
Department of Public Advocacy
100 Fair Oaks Lane
Suite 302
Frankfort, KY 40601


COUNSEL FOR APPELLEE:

Jack Conway
Kentucky Attorney General

Perry Thomas Ryan
Assistant Attorney General
Office of Attorney General
Criminal Appellate Division
1024 Capital Center Drive
Frankfort, KY 40601-8204