# IMPORTANT NOTICE
## NOT TO BE PUBLISHED OPINION

THIS OPINION IS DESIGNATED "NOT TO BE PUBLISHED."
PURSUANT TO THE RULES OF CIVIL PROCEDURE
PROMULGATED BY THE SUPREME COURT, CR 76.28(4)(C),
THIS OPINION IS NOT TO BE PUBLISHED AND SHALL NOT BE
CITED OR USED AS BINDING PRECEDENT IN ANY OTHER
CASE IN ANY COURT OF THIS STATE; HOWEVER,
UNPUBLISHED KENTUCKY APPELLATE DECISIONS,
RENDERED AFTER JANUARY 1, 2003, MAY BE CITED FOR
CONSIDERATION BY THE COURT IF THERE IS NO PUBLISHED
OPINION THAT WOULD ADEQUATELY ADDRESS THE ISSUE
BEFORE THE COURT. OPINIONS CITED FOR CONSIDERATION
BY THE COURT SHALL BE SET OUT AS AN UNPUBLISHED
DECISION IN THE FILED DOCUMENT AND A COPY OF THE
ENTIRE DECISION SHALL BE TENDERED ALONG WITH THE
DOCUMENT TO THE COURT AND ALL PARTIES TO THE
ACTION.

RENDERED: MAY 5, 2016
NOT TO BE PUBLISHED

**Supreme Court of Kentucky**

2014-SC-000320-MR

DATE 5-26-16 EliAGrouth,D.C.

PAUL ESTES            APPELLANT

V.

ON APPEAL FROM MERCER CIRCUIT COURT
HONORABLE DARREN PECKLER, JUDGE
NO. 09-CR-00079

COMMONWEALTH OF KENTUCKY            APPELLEE

**MEMORANDUM OPINION OF THE COURT**

**AFFIRMING**

Appellant, Paul Estes, appeals from a judgment of the Mercer Circuit Court convicting him of murder and sentencing him to life imprisonment without the possibility of parole for 25 years. He asserts the following errors: 1) the penalty phase verdict form misinformed the jury, inducing jurors to believe they were required to impose one of the greater sentences if they found an aggravating circumstance; 2) the murder instruction improperly stated the crime of murder by complicity and deprived Appellant of a unanimous verdict; 3) the trial court improperly excluded evidence of the details of the co-defendant's plea bargain sentence; 4) the trial court improperly denied instructions on the lesser-included offenses of first degree manslaughter, attempted murder, and voluntary intoxication; and 5) the trial court improperly refused to suppress Appellant's statement to police.

All issues were preserved except the claim of the improper complicity instruction for which Appellant seeks palpable error review. For the reasons stated below, we affirm his conviction and sentence.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

Appellant and Megan Brooks began dating in January 2009. Megan and her young daughter lived with Megan's mother, Debbie Brooks. Appellant stayed there at times. According to Appellant, Megan had an appetite for crack cocaine and methamphetamine and she introduced him to crack. At 3:53 a.m. on July 20, 2009, Megan called 911 to report that Debbie was dead. Police arriving at the scene found Debbie's body on her bedroom floor with a plastic grocery bag around her head.

The bedroom scene suggested that a struggle had occurred. The autopsy revealed bruises on the victim's hand, leg, knees, neck, shoulders, and inside of the scalp. Scrapes were found on the side of her nose and on her knee. DNA collected from beneath the victim's fingernails implicated Appellant.

Appellant was arrested and charged with Debbie's murder. Prior to his indictment and with his attorney present, Appellant confessed his involvement in the murder to police. An audio recording of his statement related the following events.

The recording revealed that Appellant told police that on the night of Debbie's death, he and Megan smoked marijuana and a large quantity of crack cocaine. When Megan's "high" began to subside, she told Appellant that she wanted to start a life together with him, but they needed money that could be

2

obtained from an insurance policy on her mother's life. For an hour, she coaxed Appellant to kill Debbie, and he was finally persuaded to do so. Appellant said he was not offered any money to kill Debbie. His only inducement was Megan's assurance that he, Megan, and Megan's daughter could have a life together as a family if he killed Megan's mother. At Megan's insistence, they entered the bedroom where Debbie was sleeping. Appellant put a pillow over Debbie's face and held it there. Debbie awakened and scuffled with Appellant to break free. Appellant said he held the pillow to her face until she lost consciousness and he believed she was dead. With Debbie lying on the floor, Appellant admitted that he asked Megan to verify that she was dead. Megan did so by placing a plastic bag tightly over Debbie's head. Megan then directed Appellant to leave the scene. She later threatened to have Appellant killed if he talked to the police. Over Appellant's objection, his audiotaped statement was played for the jury.

The medical examiner's testimony confirmed that Debbie had suffocated, but it could not be determined if death was caused by a pillow held over her face or the plastic bag found over her head. A fingerprint analyst testified that six of the eight fingerprints found on the bag matched Appellant. Megan was excluded as a source of the fingerprints. A biologist testified that the DNA taken from Debbie's fingernails matched Appellant; no conclusions could be drawn from DNA from the bag.

Appellant called Megan as a witness during his case in chief. She testified that she entered an *Alford* plea to second degree manslaughter in

3

connection with her mother's death. She said that on the night of the murder she was out with a friend using cocaine. She returned home around 3:30 a.m., checked on her daughter, and then went to sleep on the couch. At 4:00 a.m., she heard Debbie's alarm clock. She went to Debbie's bedroom, saw Debbie lying on the floor, and called 911.

Megan claimed that she had a good relationship with her mother and that she did not need her mother's money because she had her own income from selling drugs. Megan's testimony was impeached by several prior inconsistent statements. Three of Megan's former cellmates testified that Megan had made statements consistent with Appellant's account of the murder.

The jury convicted Appellant of murder and recommended a sentence of life without benefit of parole for 25 years. Judgment was entered accordingly.

## II.   ANALYSIS

### A.  Appellant was not prejudiced by the wording on the verdict form.

At the conclusion of the penalty phase of the trial, the jury was instructed to fix the Appellant's sentence from among four possible alternatives: 1) imprisonment for a term of years, not less than 20 nor more than 50; 2) imprisonment for life; 3) imprisonment for life without benefit of probation or parole for 25 years; and 4) imprisonment for life without benefit of parole. The jury was instructed that it could not fix Appellant's sentence at either of the latter two alternatives (life without parole and life without parole for 25 years), unless it also found from the evidence beyond a reasonable doubt

4

that the aggravating circumstances set forth in the instruction was true in its entirety.

The only aggravating circumstance supported by the evidence was whether "Appellant committed the Murder for himself or another, for the purpose of receiving money or any other monetary value, or for other profit." Consequently, that aggravating circumstance was written into the verdict forms of the two sentencing alternative to which they were applicable: life without parole and life without parole for 25 years. Thus, Verdict Form 3 read as follows:

> We the jury, find beyond a reasonable doubt that the following aggravating circumstance existed in this case; the Defendant committed the Murder for himself or another, for the purpose of receiving money or any other monetary value, or for other profit;
>
> and we fix the Defendant's punishment for the Murder of Debbie Brooks at [life without the benefit of parole for 25 years].

The jury completed Verdict Form Number 3 by finding the aggravating circumstance and recommending a sentence of life without the benefit of probation or parole until a minimal service of 25 years.

Verdict Form 4 was identical to Verdict Form 3 except that it provided for a sentence of life without parole, rather than life without parole for 25 years.

Appellant complains that the forms as drafted were defective. He argues that a verdict form which consolidates the finding of the aggravating circumstance with the specific penalty improperly induces the jury to conclude that if it believes the aggravating circumstance is true, then it cannot thereafter

choose one of the lesser sentencing options, but is instead obligated to fix the punishment at either life without parole or life without parole for 25 years. He compares the verdict form used here with the form we found to be improper in *Chumbler v. Commonwealth*, 905 S.W.2d 488, 497-498 (Ky. 1995). The Commonwealth agrees that the form "may be technically improper."

We acknowledge, as our case law states, that when this verdict form is read in isolation from the instructions that precede it, it suggests an unnecessary constraint on the jury's sentencing decision. However, rather than parsing each individual element of the instructions, the sections of the instructions must be taken together in context and considered as a whole. *Gribbins v. Commonwealth*, 2014-SC-000524-MR, 2016 WL 1068361 at *4 (Ky. Mar. 17, 2016) (quoting *Epperson v. Commonwealth*, 197 S.W.3d 46, 60 (Ky. 2006)); *Bills v. Commonwealth*, 851 S.W.2d 466, 471 (Ky. 1993) ("[J]ury instructions must be read as a whole.").

In *Gill v. Commonwealth*, 7 S.W.3d 365 (Ky. 1999), the potential for misconstruing a similar verdict form was eliminated by the addition of explanatory language stating: "Even though you may find the aggravating circumstance exists, you do not have to fix the defendant's punishment at either the death penalty or imprisonment for life without the benefit of probation or parole until the defendant has served a minimum of twenty-five years of his sentence." *Id.* at 370.

A clarifying statement like the one found in *Gill* would have been helpful in eliminating any question about whether the jury might have been confused.

But, upon our review of the penalty phase instructions in their entirety, reading them a whole, we are satisfied that the jury was properly apprised of its sentencing options and would not have been misled into believing that the greater sentences were an obligatory consequence of its finding that Appellant acted in accordance with the aggravating circumstance. We therefore deny this claim of error.

## B. The combined murder/complicity to murder jury instruction was misstated but manifest injustice is not shown.

Appellant was tried for murder under the alternative theories that he intentionally killed Debbie Brooks by suffocating her, or that he acted as an accomplice to Megan Brooks, who killed Debbie by suffocation. The jury instruction on the murder charge purports to present each of those alternative theories, but it fails to do so. Taken literally, it presents only the theory that Appellant acted as the principal in Debbie's murder, a theory amply supported by the evidence including his own pretrial statement. Apparently, no one involved in the case noticed the problematic language of the instruction. Appellant now contends that the instruction misstated the theory of accomplice culpability and left him susceptible to a non-unanimous verdict. Because the issue was not preserved at trial, he seeks palpable error review under RCr 10.26, pursuant to *Martin v. Commonwealth*, 409 S.W.3d 340 (Ky. 2013).

The jury instruction under review provided as follows:

You will find the Defendant guilty of Murder under this Instruction if, and only if, you believe from the evidence beyond a reasonable doubt all of the following:

7

A. That . . . the defendant, Paul E. Estes, killed Debbie Brooks by suffocation;

AND

B. That in doing so, he caused the death of Debbie Brooks intentionally

OR

C. **That another did so intentionally by acting in complicity with the defendant, Paul E. Estes, to commit this crime.**[1]

AND

D. That the Defendant, Paul E. Estes, was not acting in self-protection or under extreme emotional disturbance.

(Emphasis added.)

Parts A and B of the instruction, together with Part D, clearly and accurately state the essential elements of murder wherein the defendant acted as the perpetrator of the crime. The problem arises in Part C, which apparently was intended to incorporate the theory that Appellant would also be guilty of murder if, with the intent to cause Debbie's death, he acted in complicity with "another," namely Megan Brooks, who killed Debbie by suffocating her.[2] That is not what the instruction actually says.

KRS 502.020(1) (Liability for conduct of another; complicity) provides the definition of accomplice culpability that was included in the Appellant's jury instructions. Under the statute, guilt as an accomplice arises *only* with respect to "an offense committed by another person." In other words, Appellant could

---

[1] The indictment appears to be the source of this inaccurate language. The instruction simply repeats, almost verbatim, the allegation contained in the indictment, which charges: "That . . . the defendant, Paul E. Estes, committed the offense of Murder when he murdered Debbie Brooks by suffocation, **or that another person did so by acting in complicity with the defendant to commit this crime.**" (Emphasis added.) The literal accuracy of the indictment was never questioned.

[2] "[W]here both alternatives are supported by the evidence, combination principal /accomplice instructions, such as those given in these cases, are proper." *Futrell v. Commonwealth,* 471 S.W.3d 258, 277-278 (Ky. 2015) (citations omitted).

8

be guilty of murder by "complicity" or "as an accomplice" only if "another" person committed the actual act of killing, and he had

> (a) Solicit[ed], command[ed], or engage[d] in a conspiracy with such other person to engage in that conduct; or
>
> (b) Aid[ed], counsel[led], or attempt[ed] to aid such person in planning or committing such conduct; or
>
> (c) Having a legal duty to prevent the commission of the offense, fail[ed] to make a proper effort to do so.

KRS 502.020(1).

Consequently, Part C of the Murder instruction does not actually describe a method by which Appellant could be guilty as an accomplice. Literally, Part C posits the self-evident tautology that Appellant (Paul E. Estes) is guilty of murder if "another" person (Megan Brooks) was "acting in complicity with [Appellant] to commit this crime." Limited by proof that only Appellant and Megan were involved in the killing, a jury's finding that another person (Megan) "act[ed] in complicity with Appellant" necessarily implicates a finding that Appellant acted as the principal in killing Debbie, which is the same theory of guilt expressed in Parts A and B of the instruction. Despite the apparent intent for the instructions to articulate a theory of Appellant's guilt as an accomplice to Megan, Part C actually presents a theory of Megan's guilt for "acting in complicity with the defendant, Paul E. Estes, to commit this crime," leaving Appellant as the principal perpetrator.

Appellant contends that Part C is erroneous because it misstates the law of complicity. We think the error in the instruction is more accurately

9

described as omitting the theory that Megan was the principal and Appellant acted as *her* accomplice. The question for palpable error review is whether the error adversely affected Appellant's substantial rights resulting in manifest injustice. RCr 10.26.

The evidence overwhelmingly established that Appellant was guilty of murdering Debbie Brooks. Whether acting as principal or as Megan's accomplice, he was guilty of murder. Complicity is not a separate crime; rather, it is a means by which a crime may be committed. *Smith v. Commonwealth*, 370 S.W.3d 871, 873 n. 1 (Ky. 2012); *K.R. v. Commonwealth*, 360 S.W.3d 179, 186 (Ky. 2012) ("Rather than being a separate crime, complicity is simply the *means* of committing another crime.").

We fail to see how the inclusion of Part C or the absence of an accurate complicity instruction prejudiced Appellant. The misdrafting of Part C deprived the Commonwealth of a theory of guilt that was amply supported by the evidence because, literally read, it does not present the option of finding Appellant guilty if he acted in complicity with Megan; it states the opposite— Megan acting in complicity with him, making it redundant to Parts A and B.[3]

Relief under palpable error review "may be granted if the error resulted in

---

[3] *Futrell v. Commonwealth*, 471 S.W.3d 258, 280-81 (Ky. 2015), provides another example of misdrafted complicity to murder instructions wherein the defendant was identified in the complicity instruction as the principal perpetrator. In *Futrell*, the murder and complicity to murder instructions were set forth in separate instruction, rather than combined as here. The problem in *Futrell* that required reversal was that no evidence was presented to support the complicity theory of guilt.

manifest injustice." *Kingrey v. Commonwealth*, 396 S.W.3d 824, 831 (Ky. 2013) (citing *Martin v. Commonwealth*, 207 S.W.3d 1, 3 (Ky. 2006)). "[T]he required showing is probability of a different result or error so fundamental as to threaten a defendant's entitlement to due process of law." *Id.* (quoting *Martin*, 207 S.W.3d at 3). "Manifest injustice is found if the error seriously affected the fairness, integrity, or public reputation of the proceeding." *Kingrey*, 396 S.W.3d at 831 (quoting *McGuire v. Commonwealth*, 368 S.W.3d 100, 112 (Ky. 2012)).

We discern no possibility that a more accurately expressed instruction on a theory of accomplice guilt would have altered the outcome. Whether as the principal or the principal's accomplice, Appellant would still have been convicted of murder. We find no manifestation of unfairness or injustice based upon the wording of this instruction that would compel reversal in this case.

We also reject Appellant's claim that the defective instruction deprived him of a unanimous verdict. Under the plain reading of the instructions, all parts of the murder instruction described Appellant as the principal. With the theory of Appellant's guilt being uniform across the instructions, the potential for a non-unanimous verdict did not exist.

## C. The trial court did not err when it limited impeachment evidence.

Prior to Appellant's trial, Megan Brooks entered an *Alford* plea and was sentenced to ten years for second degree manslaughter, five years for hindering prosecution, and two years for tampering with physical evidence, all to be served consecutively. Megan testified at Appellant's

11

trial and he wanted to question her about the sentence she received and her parole eligibility. The trial court sustained the Commonwealth's objection to that line of inquiry.

Appellant argues that the evidence was relevant to show Megan's bias and incentive to lie about her involvement in the crime. We review the trial court's decision to exclude evidence for an abuse of discretion. *Meece v. Commonwealth*, 348 S.W.3d 627, 645 (Ky. 2011) (citing *Penman v. Commonwealth*, 194 S.W.3d 237, 245 (Ky. 2006)).

The trial court based its ruling on *Epperson v. Commonwealth*, 197 S.W.3d 46, 56 (Ky. 2006); *Neal v. Commonwealth*, 95 S.W.3d 843, 853 (Ky. 2003); and *Commonwealth v. Bass*, 777 S.W.2d 233, 234 (Ky. 1989), all of which hold that, as a general rule, the sentence imposed on a co-defendant is not relevant evidence during the penalty phase of a trial. Appellant sought to introduce the evidence to impeach Megan's testimony during the guilt phase, where different considerations apply, and so he contends that the aforesaid authorities are not applicable.

We agree that the proffered evidence was relevant to impeach Megan. "The credibility of a witness may be attacked by any party, including the party calling the witness." KRE 607. But relevance is not the only consideration confronting the trial judge. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of undue prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence." KRE 403. A trial

12

court has broad discretion to determine the scope of a witness's examination, "so long as a reasonably complete picture of the witness's possible biases and motivations is developed." *Commonwealth v. Maddox*, 955 S.W.2d 718, 721 (Ky. 1997) (citing *United States v. Boylan*, 898 F.2d 230, 254 (1st Cir. 1990)).

We agree that evidence of Megan's sentence and its effect upon her parole eligibility carried the prejudicial effect of improperly influencing or misleading the jury with respect to the appropriate sentence to impose upon Appellant, should it find him guilty. Whether that prejudicial effect outweighed the probative value of the evidence was a matter for the trial court to decide. We cannot say the trial court abused its discretion, and therefore, we decline to reverse the trial court's decision. In so doing, we note that while the jury did not hear the specifics of Megan's plea bargain, it was informed that she was permitted to plea to lesser charges and her motivation to testify favorably for the Commonwealth was readily discernible.

**D. The trial court did not err when it declined to instruct the jury on the lesser charges of first degree manslaughter, attempted murder, and a voluntary intoxication defense instruction.**

The trial judge must instruct the jury on the whole law of the case, RCr 9.54, and upon all theories supported by evidence upon which a reasonable juror could make the requisite finding, *Sargent v. Shaffer*, 467 S.W.3d 198, 203 (Ky. 2015). The trial court denied Appellant's request for instructions on the lesser offenses of first degree manslaughter under extreme emotional disturbance; attempted murder; and a defense instruction on intoxication. We review the trial judge's refusal to give a requested instruction for an abuse of

13

discretion. *Id.* An abuse of discretion occurs when the trial court's decision is arbitrary, unreasonable, unfair, or unsupported by sound legal principles. *Commonwealth v. English,* 993 S.W.2d 941, 945 (Ky. 1999).

### 1. First Degree Manslaughter under Extreme Emotional Disturbance

Appellant contends that his initial statement to the detective contained evidence supporting his request for an instruction on first degree manslaughter under extreme emotional disturbance instruction. More specifically, he cites his admission that, in the hours before he put the pillow over the victim's face, he had ingested crack cocaine and marijuana, and then endured Megan's persistent pressure for him to kill her mother, promising that they could use the resulting life insurance proceeds to start a life together.

An instruction on the theory of extreme emotional disturbance must be supported by evidence showing an adequate provocation, or a triggering event, that induced "a temporary state of mind so enraged, inflamed, or disturbed as to overcome [his] judgment, and to cause [him] to act uncontrollably from the impelling force of the extreme emotional disturbance rather than from evil or malicious purposes." *Benjamin v. Commonwealth,* 266 S.W.3d 775, 782 (Ky. 2008) (quoting *McClellan v. Commonwealth,* 715 S.W.2d 464, 468–469 (Ky. 1986)).

Appellant's description of what transpired to provoke him to kill Debbie is hardly the kind of impelling force required for an extreme emotional disturbance instruction. Upon review of the evidence, we agree that the

14

evidence failed to support Appellant's requested instruction. The trial court did not abuse its discretion when it denied the requested instruction.

## 2. Attempted Murder

Appellant also contends his request for an instruction on attempted murder was supported by evidence that: 1) he told police that he was not sure that the victim was dead when he released the pillow from her face; 2) the victim was found dead with a plastic bag, placed by Megan, over her head; and 3) two witnesses heard Megan say that Appellant got sick and left because he could not complete the killing.

KRS 506.010(3) provides that "[a] person is guilty of criminal attempt to commit a crime when he engages in conduct intended to aid another person to commit that crime, *although the crime is not committed or attempted by the other person*, provided that his conduct would establish complicity under KRS 502.020 if the crime were committed by the other person." (Emphasis added.)

The problem with Appellant's attempted murder theory is that the evidence unerringly shows that his attempt to kill Debbie Brooks *succeeded* in causing her death either because he finished the job himself, or because, with the intent to cause her death, he incapacitated the victim so that Megan could finish the grisly task. An instruction on attempted murder was not warranted; the trial court did not abuse its discretion by refusing to give one.

## 3. Voluntary Intoxication

Appellant argues that the evidence supported his request for an instruction on the defense of voluntary intoxication. The evidence consisted of

15

Appellant's statement to the detective that he and Megan had consumed a large quantity of crack cocaine and marijuana in the hours preceding the murder, and that Megan gave a drug dealer a car and house keys as collateral for more crack. Evidence of intoxication is not sufficient to warrant a mitigating instruction unless it completely negates the element of intent. *McGuire v. Commonwealth*, 885 S.W.2d 931, 934 (Ky. 1994); KRS 501.080.

Appellant's evidence is not indicative of his level of intoxication at the time of the murder. A reasonable jury could not infer from that evidence that Appellant was so intoxicated that he could not form the intent to kill and act accordingly. The trial court properly denied his request for a voluntary intoxication instruction.

## E. The trial court did not err when it declined to suppress Appellant's confession.

As noted above, Appellant, with counsel present, conversed with police about the crime soon after his arrest. Before trial, he moved to suppress those statements.[4] The trial court determined that Appellant's statement was made knowingly, voluntarily, and intelligently; the statement was made without coercion or promises, other than the Commonwealth's assurance that it would not seek the death penalty. The trial court denied his motion. When reviewing

---

[4] The motion was styled "Motion for Conflict of Counsel & to Suppress Statement." The hearing on the motion and the order indicated that ineffective assistance of counsel was alleged. However, the trial court concluded that the hearing was only a suppression hearing and that ineffective assistance of counsel and conflict of counsel issues were not properly before it. Consequently, we address only the motion to suppress issue.

a ruling on the suppression of a confession, we defer to the trial court's findings of fact. *Simpson v. Commonwealth*, 474 S.W.3d 544, 546-547 (Ky. 2015). We review the trial court's determination of voluntariness de novo. *Id.*

The lawyer who accompanied Appellant in the police interview testified at the suppression hearing. Appellant and the Commonwealth's detective who took the statement also testified. The lawyer testified that before Appellant spoke to police, he was advised against making a statement to police, but that if he did, a truthful statement would remove the possibility of the death penalty.

Appellant testified that he would not have spoken to police if his attorney had advised against it, and that he spoke to police only because he believed that his cooperation would result in a lesser sentence than Megan. He also testified that he was following non-verbal cues from his lawyer when he told the detective that his statement was voluntary. The detective testified that he did not see any overt non-verbal communication by counsel. The trial court found that Appellant decided to speak to the police voluntarily to incriminate his co-defendant, to relieve his own conscience, and to remove the possibility of a death penalty; and that he was not motivated by the promise of a lesser sentence.

To determine whether a confession was coerced, and hence, involuntary, we consider the totality of the circumstances, including "1) whether the police activity was 'objectively coercive;' 2) whether the coercion overbore the will of the defendant; and 3) whether the defendant showed that the coercive police

17

activity was the "crucial motivating factor" behind the defendant's confession." *Henson v. Commonwealth*, 20 S.W.3d 466, 469 (Ky. 1999) (citations omitted). Upon review of the circumstances, we conclude that Appellant's statement was not the product of objectively coercive police activity. By all reasonable accounts, Appellant's confession was voluntary. The trial court properly denied Appellant's motion to suppress.

## III.   CONCLUSION

For the foregoing reasons, the judgment of the Mercer Circuit Court is affirmed.

All sitting. All concur.

COUNSEL FOR APPELLANT:

Kathleen Kallaher Schmidt
Assistant Public Advocate


COUNSEL FOR APPELLEE:

Andy Beshear
Attorney General of Kentucky

David Wayne Barr
Assistant Attorney General